IN RE THE ADOPTION OF DANIEL JAMES CLARK

No. 8821SC916

(Filed 15 August 1989)

1. **Adoption § 2; Rules of Civil Procedure § 19— failure to join putative father — no opportunity given to join putative father — dismissal of adoption proceeding improper**

   Even if former N.C.G.S. § 48-5(c) provided no basis for petitioners' failure to name the putative father as a party of record in an adoption proceeding, and even if the putative father's consent to the adoption was necessary, petitioners' failure to join him at the time they filed their original adoption petition did not authorize the trial court to dismiss the adoption proceeding without first giving petitioners the opportunity to join the putative father within a reasonable time.

2. **Adoption § 2— no determination of putative father's rights — determination not required — putative father's consent not required**

   The trial court in an adoption proceeding erred in concluding that there must be a valid determination of the parental rights of the putative father prior to the filing of the adoption petition, that the Court of Appeals' earlier opinion which set aside the Termination Order rendered "the very basis of the adoption proceeding . . . void," and that the

1

IN RE ADOPTION OF CLARK

[95 N.C. App. 1 (1989)]

putative father's consent was necessary before the adoption of the child could continue, since prior termination of the putative father's rights under N.C.G.S. Chapter 7A was not necessary if, under the applicable provisions of N.C.G.S. Chapter 48, his consent to the adoption was not necessary; the earlier decision of the Court of Appeals did not "void" the basis of the adoption proceeding on the earlier termination proceeding, but simply held that the Termination Order must be set aside since the *service* on the putative father was void; and, pursuant to N.C.G.S. § 48-6(a)(3), the putative father's consent was unnecessary because he failed to take any steps before the filing of the adoption petition to legitimate his child, the putative father's knowledge of the existence of his illegitimate child being irrelevant to a proper analysis of the necessity of his consent.

3. **Adoption § 2; Rules of Civil Procedure § 15— putative father's failure to legitimate child—amendment of adoption petition proper**

Because Rule 15 of the N.C. Rules of Civil Procedure applies to adoption proceedings, petitioners could properly .amend or supplement their petition for adoption with an affidavit concerning the putative father's failure to legitimate his child, as required by N.C.G.S. § 48-13, and respondent was not prejudiced by the amendment where he did not see the adoption petition until it had been supplemented with the necessary affidavit.

Judge COZORT dissenting.

APPEAL by petitioners, Adoptive Parents and Family Services, Inc. from *Seay (Thomas W.), Judge.* Order entered 16 May 1988 in Superior Court, FORSYTH County. Heard in the Court of Appeals 16 March 1989.

*Roy G. Hall, Jr., for petitioner-appellants, Adoptive Parents and Family Services, Inc.*

*Wilson, DeGraw & Johnson, by Daniel S. Johnson, for respondent-appellee.*

GREENE, Judge.

This appeal by petitioners Family Services, Inc. and the adoptive parents arises from the superior court's order dismissing an

## IN RE ADOPTION OF CLARK

[95 N.C. App. 1 (1989)]

adoption proceeding related to the adoption of Daniel James Clark. The undisputed facts are that Stephanie Ann Clark and Christian Paul Lampe dated each other from October 1982 through April 1983. During that time they had sexual relations without the use of any contraceptives. Ms. Clark terminated the relationship with Mr. Lampe in April 1983 but did not tell Mr. Lampe she was pregnant. On 25 August 1983, Ms. Clark gave birth to the child, Daniel. On 31 August 1983, Ms. Clark released all of her rights in the child to Family Services and consented to the child's adoption. Ms. Clark never informed Mr. Lampe that she had given birth to the child nor that she had consented to the child's adoption; however, before she released her rights in the child to Family Services in August 1983, Ms. Clark told a Family Services employee the name of the child's father was Christian Paul Lampe whom she believed lived in Winston-Salem, North Carolina.

Family Services petitioned to terminate Mr. Lampe's parental rights based on Mr. Lampe's failure to take steps to legitimate the child under Section 7A-289.32(6). Cf. N.C.G.S. Sec. 7A-289.32(6) (1984) (may terminate putative father's rights if fails to legitimate or support child before termination petition filed). Family Services purportedly attempted to serve Mr. Lampe by publication under Rule 4. On 18 January 1984, the trial court entered an order terminating Mr. Lampe's rights under Section 7A-289.32(6) based on his failure to take steps to legitimate the child before the filing of the termination petition. On 16 February 1984, the adoptive parents filed a petition to adopt the child accompanied by a copy of the order terminating Mr. Lampe's parental rights (the "Termination Order"). The clerk entered his interlocutory adoption decree on 17 April 1984.

In March 1984, Family Services wrote Mr. Lampe requesting information about his background in order to assist the minor child. Upon receipt of that letter, Mr. Lampe immediately contacted Family Services and learned for the first time that Ms. Clark had given birth to their child and that she had released her parental rights. On 2 May 1984, Mr. Lampe moved to set aside the Termination Order on the ground that his service by publication was invalid because Family Services failed to exercise due diligence in attempting to locate him. On 4 May 1984, Mr. Lampe filed a special proceeding in superior court to legitimate his child. In June 1984, the district court set aside the termination order. On 16 July 1985, this court rendered its decision affirming the order of the district

**IN RE ADOPTION OF CLARK**

[95 N.C. App. 1 (1989)]

court vacating the Termination Order based on Family Services's failure to exercise due diligence in attempting to serve Mr. Lampe with the petition. *In re Clark,* 76 N.C. App. 83, 332 S.E.2d 196, *disc. rev. denied,* 314 N.C. 665, 335 S.E.2d 322 (1985). Family Services voluntarily dismissed its petition to terminate Mr. Lampe's parental rights under Chapter 7A and petitioners instead pursued the adoption proceedings commenced under Chapter 48.

On 4 February 1986, the Clerk of Superior Court served Mr. Lampe with notice of a hearing (the "Consent Hearing") to determine whether or not his consent was necessary to the proposed adoption of Daniel James Clark. After hearing evidence, the Clerk concluded that Mr. Lampe's consent was not necessary since he had failed to take any steps to legitimate or support the child before petitioners filed the adoption petition on 16 February 1984. Mr. Lampe appealed to the superior court which reversed the clerk, made various new findings, and concluded Mr. Lampe's consent was necessary before the adoption could continue. The superior court therefore dismissed the adoption petition without prejudice to its refiling. Petitioners appealed.

---

The issues presented for review are: I) Whether the trial court erroneously dismissed the adoption proceeding based on petitioners' failure to join the putative father at the time the original adoption petition was filed; II) whether the putative father's consent to adoption was necessary under Section 48-6(a)(3); and III) whether the trial court erroneously dismissed the proceedings based on petitioners' initial failure to file an affidavit under Section 48-13 that the putative father's consent was not necessary under Section 48-6(a)(3).

I

[1] One basis for the trial court's dismissal was its finding that Mr. Lampe was not named as a party in the adoption petition filed 18 February 1984. Mr. Lampe was apparently not served in the adoption proceeding until he received notice of the Consent Hearing in February 1986. Section 48-7(a) states that, "except as provided in G.S. 48-5, 48-6 or Article 24B of Chapter 7A, and if they are living and have not released all rights to the child and consented generally to adoption as provided in G.S. 48-9, the parents or surviving parent or guardian of the person of the child must be a party or parties of record to the proceeding and must give

IN RE ADOPTION OF CLARK

[95 N.C. App. 1 (1989)]

written consent to adoption . . ." N.C.G.S. Sec. 48-7(a) (1984). Section 48-5(a) states that, "The court shall be authorized to determine whether the parent or parents of a child shall be necessary parties to any proceeding under this Chapter, and whether the consent of such parent or parents shall be required in accordance with G.S. 48-6 and 48-7." N.C.G.S. Sec. 48-5(a) (1984).

Since they filed the Termination Order with the original adoption petition, petitioners apparently believed Mr. Lampe was not a necessary party nor was his consent needed based on former Section 48-5(c), which stated in part, "In all cases where a district court has entered an order pursuant to . . . Article 24B of Chapter 7A terminating the parental rights *with respect to a child adjudicated to be neglected or dependent,* the parent whose parental rights with respect to such child may have been terminated shall not be a necessary party to any proceeding under this Chapter nor shall the consent of such parent or parents be required." N.C.G.S. Sec. 48-5(c) (1984) (emphasis added). Section 48-5(c) was amended in 1985 to provide that a parent whose parental rights were terminated for *any* reason under Article 24B of Chapter 7A is not a necessary party nor shall his or her consent be necessary to an adoption proceeding. N.C.G.S. Sec. 48-5(c) (1988 Cum. Supp.). However, the child in this case was never adjudicated neglected or dependent as required under the version of Section 48-5(c) effective at the time the original adoption petition was filed. Therefore, former Section 48-5(c) provided no basis for petitioners' failure to name Mr. Lampe as a party of record under Section 48-7(a).

However, even assuming Mr. Lampe's consent to this adoption was necessary, petitioners' failure to join Mr. Lampe at the time they filed their original adoption petition did not authorize the trial court to dismiss the adoption proceeding without first giving petitioners the opportunity to join Mr. Lampe within a reasonable time:

Where . . . a fatal defect of the parties is disclosed, the court should refuse to deal with the merits of the case until the absent parties are brought into the action, and in the absence of a proper motion by a competent person, the defect should be corrected by *ex mero motu* ruling of the court . . . *Absence of necessary parties does not merit a nonsuit. Instead, the court should order a continuance so as to provide a reasonable time for them to be brought in and plead.*

IN RE ADOPTION OF CLARK

[95 N.C. App. 1 (1989)]

*Booker v. Everhart*, 294 N.C. 146, 158, 240 S.E.2d 360, 367 (1978) (emphasis added) (citations omitted). Although *Booker* did not involve an adoption proceeding, the *Booker* Court's holding concerning the procedure for dismissing an action for failure to join a necessary party applies to adoption proceedings since the Rules of Civil Procedure and the provisions of Section 1-393 *et seq.* apply to adoption proceedings. *In re Searle*, 74 N.C. App. 61, 64, 327 S.E.2d 315, 317 (1985) (Rules of Civil Procedure and Section 1-393 *et seq.* apply to adoptions as special proceedings); *see also Virginia Electric and Power Co. v. Tillet*, 316 N.C. 73, 340 S.E.2d 62 (1986).

Therefore, even if Mr. Lampe's consent was necessary to this adoption, we conclude under *Booker* that the trial court could not dismiss the adoption proceedings based on petitioners' failure to name Mr. Lampe as a party without first giving petitioners the opportunity to join Mr. Lampe within a reasonable time.

II

[2] The trial court concluded that there must be a valid determination of the parental rights of Mr. Lampe prior to the filing of the adoption petition. The trial court found that this court's earlier opinion which set aside the Termination Order rendered "the very basis of the adoption proceeding . . . void . . . ." The court therefore concluded that Mr. Lampe's consent was necessary before the adoption of the child could continue. All three conclusions are erroneous.

First, the earlier decision of this court setting aside the Termination Order did not "void" the basis of this adoption proceeding *or* the earlier termination proceeding, but simply held that the Termination Order must be set aside since the *service* on Mr. Lampe was void. *Clark*, 76 N.C. App. at 87, 332 S.E.2d at 199-200. Family Services was not necessarily required to dismiss the termination proceeding after our earlier decision in *Clark*, but could have instead sought to join Mr. Lampe in the termination proceeding as permitted under *Booker*. In our earlier decision, we expressed no opinion on the substantive merits of the Termination Order insofar as it terminated Mr. Lampe's parental rights for failure to legitimate or support his child before the termination petition was filed.

Second, the trial court believed Mr. Lampe's parental rights actually had to be terminated before the petition for adoption could

IN RE ADOPTION OF CLARK

[95 N.C. App. 1 (1989)]

be filed. While termination of a putative father's rights *may* precede an adoption petition, prior termination of his rights under Chapter 7A is not necessary if, under the applicable provisions of Chapter 48, his consent to the adoption is not necessary. His parental rights are then terminated by the final order of adoption under Section 48-23, which states, "The biological parents of the person adopted, if living, shall, from and after the entry of the final order of adoption . . . be divested of all rights with respect to such person." N.C.G.S. Sec. 48-23(2) (1984) (does not apply if putative father has adopted his own child); *see Rhodes v. Henderson*, 14 N.C. App. 404, 407, 188 S.E. 2d 565, 567 (1972) (final adoption decree terminates parental rights of natural parents); *cf.* N.C.G.S. Sec. 48-5(d) (1988 Cum. Supp.) (if parental rights have not previously been terminated under Article 24B of Chapter 7A, petitioner "may" file petition to terminate parental rights; adoption proceeding shall continue until final disposition of termination petition).

Finally, Section 48-6 sets forth various conditions under which a putative father's consent to the adoption is not required. The provisions pertinent to this case provide that:

> In the case of a child born out of wedlock the consent of the putative father shall not be required *unless prior to the filing of the adoption petition:*
>
>> a. Paternity has been judicially established or acknowledged by affidavit which has been filed in a central registry maintained by the Department of Human Resources . . . b. The child has been legitimated either by marriage to the mother or in accordance with provisions of G.S. 49-10, a petition for legitimation has been filed; or c. The putative father has provided substantial financial support or consistent care with respect to the child and mother.
>
> Determination under G.S. 48-6(a)(3) that the adoption may proceed without the putative father's consent shall be made only after notice to him pursuant to G.S. 1A, Rule 4. This notice shall be titled in the biological name of the child.

N.C.G.S. Sec. 48-6(a)(3) (1984) (emphasis added). Aside from the requirement that a "termination" petition rather than an "adoption" petition be filed, we note the grounds which render a putative father's consent unnecessary under Section 48-6(a)(3) are identical to the grounds for terminating his parental rights under Section 7A-289.32(6).

IN RE ADOPTION OF CLARK

[95 N.C. App. 1 (1989)]

Mr. Lampe received notice of the Consent Hearing, filed various motions to dismiss the adoption proceeding, and argued strenuously that his consent to the adoption was necessary despite the language of Section 48-6(a)(3). Based on Mr. Lampe's argument that he took steps to legitimate this child as soon as he knew of its existence, the trial court rejected petitioners' argument that Mr. Lampe's consent to the adoption was rendered unnecessary by his failure to take the necessary steps to legitimate the child "prior to the filing of the adoption petition" under Section 48-6(a)(3). We reject the trial court's construction of Section 48-6(a)(3). Irrespective of when it was served, the adoption petition was "filed" on 16 February 1984. The first action taken by Mr. Lampe to legitimate his child under Section 48-6(a)(3) occurred on 4 May 1984 when he filed the special proceeding in superior court to legitimate the child. Thus, Mr. Lampe clearly did not take the necessary steps before the "filing of the adoption petition."

Mr. Lampe asserts he had no knowledge of the child's birth until he was notified of the Consent Hearing on 16 February 1984; he further contends, and the trial court found, that petitioners had sufficient information prior to the filing of the adoption proceeding to locate and serve Mr. Lampe with notice of the proceedings. However, a putative father's knowledge of the existence of his illegitimate child is not relevant to a proper analysis of the necessity of a putative father's consent under Section 48-6(a)(3). That statute does not provide that the putative father must take steps to legitimate the child within a certain time period after he has received notice of the proceedings under Rule 4; nor does the statute provide that the putative father has the right to veto the adoption if he takes steps to legitimate the child after he becomes aware of its existence. Section 48-6(a)(3) does not require that the putative father "willfully" fail to legitimate the child before the filing of the petition: it simply provides that the putative father's consent is unnecessary unless he takes certain steps to legitimate or support his illegitimate child before the adoption petition is filed. In so providing, Section 48-6(a)(3) reflects the same legislative choices evident in the termination of a putative father's rights under Section 7A-289.32(6): under neither statute is the illegitimate child's future welfare dependent on whether or not the putative father knows of the child's existence at the time the petition is filed.

The Legislature was clearly aware of the admittedly difficult policy considerations underlying the issue of a putative father's

IN RE ADOPTION OF CLARK

[95 N.C. App. 1 (1989)]

right to veto the adoption of his illegitimate child. The Legislature stated these concerns in Section 48-1:

> The General Assembly hereby declares as a matter of legislative policy with respect to adoption that — (1) the primary purpose of this chapter is to protect children from unnecessary separation from parents who might give them good homes and loving care, to protect them from adoption by persons unfit to have the responsibility of their care and rearing, *and to protect them from interference, long after they have become properly adjusted in their adoptive homes by biological parents who may have some legal claim because of a defect in the adoption procedure. . . . The secondary purpose of this Chapter is . . . to prevent later disturbance of [the adoptive parent's] relationship to the child by biological parents whose legal rights have not been fully protected.*

N.C.G.S. Sec. 48-1(1), (2) (1984) (emphasis added). In Section 48-6(a)(3), the Legislature weighed the putative father's rights against the child's need for a stable adoptive home by choosing the date the adoption petition is filed as the date before which the putative father must take some step to legitimate or support his child. Although the putative father is certainly entitled to notice under Section 48-6(a)(3) of any hearing held to determine the necessity of his consent, the statutes do not provide for any notice to the putative father of a petitioner's *intent* to file a petition to adopt his illegitimate child or otherwise terminate his parental rights.

While the Legislature could have reasonably set the bar date at another point in time, it is certainly not unreasonable to charge putative fathers with the responsibility to discover the birth of their illegitimate children. *Cf. Lehr v. Robertson*, 463 U.S. 248, 77 L.Ed.2d 614, 103 S.Ct. 2985 (1983) (unmarried father lacking custodial, personal, or financial relationship with child is not entitled to notice of child's adoption proceeding under due process and equal protection clauses). Since the record clearly shows Mr. Lampe failed to take any steps before the filing of the adoption petition to legitimate this child, we hold Mr. Lampe's consent to this adoption is unnecessary pursuant to Section 48-6(a)(3).

III

[3] The trial court also dismissed the petition based on petitioners' alleged failure to comply with the statutory requirements of Section

**IN RE ADOPTION OF CLARK**

[95 N.C. App. 1 (1989)]

48-13 and Section 48-15. Section 48-15 merely summarizes the necessary contents of the adoption petition and states that, "The petition may be prepared on a standard form to be supplied by the Department of Human Resources, or may be typewritten, giving all the information required . . . ." N.C.G.S. Sec. 48-15(b) (1984). We have reviewed the copy of the petition in the record and find that at the time it was filed and at the time it was dismissed it complied in all respects with Section 48-15.

However, Section 48-13 provides that, "in the case of a child born out of wedlock and not legitimated prior to the time of the signing of the consent, an affidavit setting forth such facts sufficient to show that only the consent required under G.S. 48-6 is necessary shall be filed with a petition for adoption." N.C.G.S. Sec. 48-13 (1984). As noted above, petitioners believed Mr. Lampe's consent was not necessary under their mistaken interpretation of the version of Section 48-5(c) in effect at the time the adoption petition was filed; therefore, they did not at that time file the supporting affidavit required under Section 48-13. Petitioners did not file the affidavit required under Section 48-13 until the Termination Order was set aside by this court in 1986.

The trial court apparently believed petitioners could not amend or supplement their petition by filing the necessary affidavit as they did in 1986. This is incorrect. As with all the adoption statutes, the construction of Section 48-13 "should not be narrow or technical nor compliance therewith examined with a judicial microscope in order that every slight defect may be magnified—rather, the construction ought to be fair and reasonable, so as not to defeat the act or the beneficial results where all material provisions of the statute have been complied with." *Locke v. Merrick*, 223 N.C. 799, 803, 28 S.E.2d 523, 527 (1944). As noted above, the Rules of Civil Procedure and statutes governing special proceedings govern this question since the adoption statutes do not address amended or supplemental petitions. Section 1-399 states that, "the trial judge may, with a view to substantial justice between the parties, allow amendments to the pleadings and interpleas in behalf of any person claiming an interest in the property." Our Supreme Court has held Rule 15 applies to condemnation proceedings. *Virginia Electric and Power Co.*, 316 N.C. at 77-78, 340 S.E.2d at 65.

We likewise conclude Rule 15 of our Rules of Civil Procedure applies to adoption proceedings. Rule 15(a) provides that leave to

amend shall be freely given when justice so requires. N.C.G.S. Sec. 1A-1, Rule 15(a) (1983). Supplemental pleadings must also be allowed unless the allowance would impose a substantial injustice upon the opposing party. *Foy v. Foy*, 57 N.C. App. 128, 290 S.E.2d 748 (1982). Reasons justifying denial of an amendment include undue delay, bad faith, undue prejudice, futility of amendment, and repeated failure to cure defects by previous amendments. *Martin v. Hare*, 78 N.C. App. 358, 337 S.E.2d 632 (1985). The first notice Mr. Lampe received concerning the adoption proceedings was the notice of the Consent Hearing with the affidavit attached setting forth the grounds why his consent was not necessary under Section 48-6(a)(3). Since Mr. Lampe did not see the adoption petition until it had been supplemented with the necessary affidavit, we fail to see how Mr. Lampe was materially prejudiced by allowing the affidavit to be filed after its necessity became apparent when this court set aside the Termination Order. Furthermore, the Termination Order filed with the original petition stated Mr. Lampe's parental rights had been terminated because he had failed to take the steps necessary to legitimate his child before the termination petition was filed. Since the petition therefore gave sufficient notice of the legitimacy issue, petitioners' affidavit — which merely reiterated Mr. Lampe's failure to legitimate his child — relates back to the date the original petition was filed. *See Mauney v. Morris*, 316 N.C. 67, 340 S.E.2d 397 (1986); *see also Burcl v. North Carolina Baptist Hospital, Inc.*, 306 N.C. 214, 293 S.E.2d 85 (1982) (supplemental pleadings are liberally allowed and will relate back to date of original filing). Under these circumstances, we conclude the trial court erroneously dismissed the adoption petition for failure to comply with Section 48-13 at the time of the original filing in 1984.

Accordingly, we reverse the trial court's judgment dismissing the adoption proceeding and hold the adoption proceeding shall proceed without the consent of Mr. Lampe.

Reversed and remanded.

Judge EAGLES concurs.

Judge COZORT dissents.

IN RE ADOPTION OF CLARK

[95 N.C. App. 1 (1989)]

Judge COZORT dissenting.

I do not agree with the majority's conclusion that the trial court erred in dismissing the adoption petition, and I must dissent, even though further appeals and legal proceedings will make even more difficult the already formidable task of deciding what is best for this child who is now six years old and apparently knows nothing of his purported father or that man's efforts to legitimate him and win his custody.

The majority opinion makes virtually no reference to the trial court's findings and conclusions dealing with petitioners' making no attempt to contact Mr. Lampe until after the petition for adoption had been filed, a failing the trial court characterized as willful and negligent. Likewise, the majority appears to have been unaffected by this Court's opinion of 1985 upholding the setting aside of the 1984 Order terminating Mr. Lampe's parental rights. In that case, this Court stated:

> Although the record reveals that Clark was evasive concerning Lampe's whereabouts, it is equally clear that she told everyone involved that the father's name was Christian Paul Lampe. We are not persuaded that the two possible spellings of his last name (Lamp or Lampe) given by Clark created any genuine doubt about the name or identity of the respondent.
>
> *     *     *     *
>
> As we noted earlier, the trial court concluded as a matter of law that "petitioner did not exercise a diligent effort at the time of the preliminary hearing" in locating Lampe. . . .

> In this case, petitioner knew respondent's name and the county in which he resided. The court found as a fact that the Forsyth County telephone directory contained only two listings under the name of "Lampe" during the time of the petition. Petitioner called only one of these numbers and found it to be disconnected. The other listing had belonged to respondent's father since August 1978. The court also found that the petitioner issued a subpoena to Appalachian State University for records relating to Lampe, but that no further check was made in regard to these records until after the termination order was signed.

> We find the following findings of fact most persuasive:

IN RE ADOPTION OF CLARK

[95 N.C. App. 1 (1989)]

12. That since 1982, Christian Paul Lampe has had a North Carolina driver's license with the address of 101 Waddington Road, Clemmons, North Carolina; further that Christian Paul Lampe pays personal property taxes in Forsyth County with his address listed as 101 Waddington Road, Clemmons, North Carolina; further, that he is registered to vote in Forsyth County with his address for his draft recorded as 101 Waddington Road, Clemmons, North Carolina; further, at the time of the birth of the child, the movant had enrolled at Elon College and his parents lived at 101 Waddington Road and continue to reside there at this time.

13. That the petitioner in this matter checked no public records to determine the location and identity of the father of the minor child but instead relied solely on the information supplied by Stephanie Ann Clark.

. . . We . . . conclude that under the facts of this particular case, petitioner failed to act with due diligence in attempting to determine respondent's whereabouts.

*In re Clark*, 76 N.C. App. 83, 85-87, 332 S.E.2d 196, 198-200, *disc. rev. denied and appeal dismissed*, 314 N.C. 665, 335 S.E.2d 322 (1985).

The majority's opinion has the effect of overturning this Court's 1985 decision. The majority holds that the putative father's consent is not required because the adoption petition was filed before the putative father initiated proceedings to legitimate the child. This holding ignores the fact that the father could not have attempted to legitimate the child because he had no knowledge of the child; and he had no knowledge due to the petitioners' lack of diligence, as this Court has previously affirmed, which lack the trial court characterized as willful and negligent. To allow the petitioners to go forward with the adoption, without the father's consent, makes meaningless our opinion overturning the termination order. In effect, we would allow the petitioners to terminate the father's rights through the adoption process. I do not believe we should be a party to such flaunting of the father's rights and the rules of law.

I agree with the trial court's decision that, on the facts of this case, petitioners cannot proceed with adoption without the father's consent. I vote to affirm.