IN RE THE ADOPTION OF DANIEL JAMES CLARK

No. 395A89

(Filed 26 July 1990)

**Adoption § 13 (NCI4th) — statutorily required affidavit — rights of father**

The trial court did not abuse its discretion in an adoption proceeding by not allowing the affidavit required by N.C.G.S. § 48-13, filed two years after the adoption petition, to relate back to the original adoption petition where the child was born out of wedlock; the father was unaware of the birth of the child; the adoption agency filed a petition to terminate the father's parental rights; notice of service by publication was published in a local newspaper and the order terminating parental rights was issued; the child was then placed with adoptive parents who filed a petition for adoption; and the petition for adoption included a copy of the termination order rather than the affidavit required by N.C.G.S. § 48-13. The affidavit provides the basis for the clerk to determine if the father is a necessary party to the proceeding and is therefore not a mere technicality; moreover, the termination order filed here was invalid because the service by publication was void since due diligence was not used to determine the father's address. Although the adoption agency subsequently filed an affidavit, the father would be prejudiced by any attempt to relate a filing back to a time when he had no notice of the birth of his child in that he could lose his parental rights after taking action to avoid that outcome by filing a petition

IN RE ADOPTION OF CLARK

[327 N.C. 61 (1990)]

for legitimation after learning of the birth of his child. The father's consent is necessary for the adoption to proceed in this case. N.C.G.S. § 48-6(a)(3).

**Am Jur 2d, Adoption §§ 26, 49, 55.**

Justice WHICHARD dissenting.

Justices MITCHELL and WEBB join in the dissenting opinion.

APPEAL by respondent pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 95 N.C. App. 1, 381 S.E.2d 835 (1989), reversing the order of *Seay, J.*, entered in Superior Court, FORSYTH County, on 16 May 1988. Heard in the Supreme Court 12 March 1990.

*Wilson, DeGraw, Johnson & Ruthledge, by Daniel S. Johnson and David F. Tamer, for appellant.*

*Roy G. Hall, Jr. for appellee.*

FRYE, Justice.

The issues in this case are whether the Court of Appeals erred in reversing the trial court's order: (1) dismissing the adoption proceeding involving Daniel James Clark; and (2) holding that the adoption proceeding cannot proceed without the consent of the biological father of the child. We find no error or abuse of discretion in the trial court's order dismissing the adoption petition without prejudice to its refiling and finding that Mr. Lampe's consent was necessary before the adoption proceeding could continue. We, therefore, reverse the Court of Appeals which held to the contrary.

The undisputed facts of this case are both heart rending and unique. They concern the efforts of the biological father of Daniel James Clark to assert his paternal rights and responsibilities over a period of more than six years of litigation during which time his child has been tentatively placed in an adoptive home, apparently unaware of his father's efforts to establish contact with him.

Daniel James Clark was born to Stephanie Ann Clark on 25 August 1983. Ms. Clark had been dating Christian Paul Lampe from October 1982 until April 1983. During this period they had sexual relations, and Ms. Clark told Mr. Lampe that she was using some form of contraceptive when she was in actuality not using

## IN RE ADOPTION OF CLARK

[327 N.C. 61 (1990)]

any form of birth control. In April 1983, Ms. Clark told Mr. Lampe that she did not want to see him again. At that time she knew that she was pregnant, but she did not tell Mr. Lampe. Ms. Clark carried the baby to full term without anyone in her family or Mr. Lampe's family ever being aware of the pregnancy.

After giving birth to the child, Ms. Clark contacted Family Services, Inc., which is a non-profit, child-placing agency, and told its representative that she wished to give the child up for adoption. On 31 August 1983, Ms. Clark executed and delivered to Family Services a "Parent's Release, Surrender and Consent to Adoption" in which she gave up rights to the child and consented to his adoption. Ms. Clark did this without ever telling Mr. Lampe about the birth. Before releasing her rights to the child, she told Family Services that Mr. Lampe was the father of the child. The record indicates that Family Services knew that the child's father was unaware of Ms. Clark's pregnancy or the birth of his child. During the pre-adoption interviews, Ms. Clark was evasive about Mr. Lampe's whereabouts and later gave Family Services an incorrect telephone number for him.

Armed with the knowledge that the father's name was Christian Paul Lampe and that he had at least recently lived in the Winston-Salem area, Family Services made only one unsuccessful attempt to contact Mr. Lampe by telephone. While the local telephone directory had two listings for "Lampe," Family Services called only one of them. This number had been disconnected, and Family Services made no attempt to call the second number which was that of Mr. Lampe's parents, the number and address which Mr. Lampe used as his permanent address while away at college. The record reflects that Family Services made no other attempt to contact Mr. Lampe prior to initiating a termination proceeding even though: (1) Mr. Lampe had a North Carolina driver's license since 1982 listing his parents' home address as his permanent address; (2) Mr. Lampe paid personal property taxes in Forsyth County listing his parents' home address as his permanent address; and (3) Mr. Lampe was registered to vote in Forsyth County again listing his parents' address as his permanent home address. Family Services did not consult any of these public records in an attempt to locate Mr. Lampe but instead relied on the incomplete and inaccurate information which Ms. Clark provided.

IN RE ADOPTION OF CLARK

[327 N.C. 61 (1990)]

On 1 December 1983, Family Services filed a petition to terminate Mr. Lampe's parental rights. This petition was based on N.C.G.S. § 7A-289.32(6) which sets out when parental rights of the father of a child born out of wedlock may be terminated. Claiming that it was unable to locate Mr. Lampe, Family Services requested a preliminary hearing pursuant to N.C.G.S. § 7A-289.26. On 8 December 1983, the trial judge concluded, "[t]he father of the above-named child, not having been served with notice due to his exact whereabouts being unknown, must be served with notice by publication." A notice of service by publication was published in a local newspaper. An order terminating Mr. Lampe's parental rights was issued on 18 January 1984. The child was then placed with the adoptive parents who filed a petition for adoption on 16 February 1984. With the petition for adoption, the adoptive parents filed a copy of the termination order rather than the affidavit required by N.C.G.S. § 48-13.

While it had told the trial judge during the termination proceeding that it was unable to locate Mr. Lampe, Family Services sent him a letter at his parents' address on 27 March 1984, after the termination order was entered and after the adoption petition was filed. This letter asked Mr. Lampe to contact the agency in order to provide information about his background and family medical history. Upon receipt of this letter in early April, Mr. Lampe immediately called Family Services and found out for the first time that Ms. Clark had a child in August 1983, that she had given the child up for adoption, and that she had named him as the father of the child. On 2 May 1984, Mr. Lampe filed a motion to set aside the termination order on the grounds that service upon him by publication was invalid because Family Services failed to use due diligence in attempting to locate him. On 14 June 1984, the district court set aside the termination order issued 18 January 1984 on the grounds that Family Services did not exercise a diligent effort at the time of the preliminary hearing to locate Mr. Lampe. The Court of Appeals affirmed the district court's order, and this Court denied discretionary review. *In re Clark*, 76 N.C. App. 83, 332 S.E.2d 196, *disc. rev. denied*, 314 N.C. 665, 335 S.E.2d 322 (1985).

After he filed the motion to set aside the termination order, Mr. Lampe, on 4 May 1984, filed a special proceeding to legitimate the child and, on 23 July 1984, filed a motion for a restraining order prohibiting the clerk of superior court from proceeding with

IN RE ADOPTION OF CLARK

[327 N.C. 61 (1990)]

the adoption proceedings. The restraining order was issued on 29 August 1984.

After this Court denied discretionary review of the Court of Appeals' decision affirming the setting aside of the termination order, Family Services voluntarily dismissed the petition for the termination order and filed a motion on 24 October 1985 to dismiss the restraining order which had prevented the adoption from proceeding. This motion was granted on 12 December 1985, and the order dismissing the restraining order further instructed the clerk of superior court to cause notice to be issued and served on Mr. Lampe, pursuant to N.C.G.S. § 48-6(a)(3), to show cause as to why his consent to the adoption of the child was necessary or required. This notice was filed on 4 February 1986. Included with this notice was a copy of an affidavit by the Director of Family Services. The affidavit, dated 2 January 1986, stated that prior to the filing of the adoption petition on 16 February 1984, Mr. Lampe had taken none of the steps enumerated in N.C.G.S. § 48-6(a)(3) which would make his consent necessary. The affidavit made no reference to the legitimation proceeding instituted by Mr. Lampe on 4 May 1984.

The assistant clerk of the superior court held a hearing on this matter and allowed Mr. Lampe to offer evidence as to why his consent was necessary before the adoption could proceed. On 9 June 1986, the assistant clerk filed an order which, based on findings of fact and conclusions of law, ordered among other things:

1. The consent of Christian Paul Lampe to the adoption of Daniel James Clark by the adoptive parents is not and shall not be necessary nor required; and

2. The adoption proceeding for the adoption of Daniel James Clark shall proceed without the consent of Christian Paul Lampe . . . .

Mr. Lampe gave notice of appeal from this order on 13 June 1986. A *de novo* hearing was begun in the superior court on 27 January 1988. The trial judge made findings of fact and conclusions of law and issued an order on 16 May 1988. This order provided:

1. That the adoption petition is hereby dismissed without prejudice as to its refiling.

2. That the consent of the biological father is necessary before the adoption of the minor child, Daniel James Clark, may continue.

IN RE ADOPTION OF CLARK

[327 N.C. 61 (1990)]

Family Services and the adoptive parents appealed from this order to the Court of Appeals. The Court of Appeals reversed the order of the trial judge and remanded the case to the superior court. *In re Adoption of Clark*, 95 N.C. App. 1, 381 S.E.2d 835 (1989). Mr. Lampe appealed to this Court as a matter of right based on the dissenting opinion in the Court of Appeals.

In his dissenting opinion, Judge Cozort said:

The majority's opinion has the effect of overturning this Court's 1985 decision . . . . To allow the petitioners to go forward with the adoption, without the father's consent, makes meaningless our opinion overturning the termination order. In effect, we would allow the petitioners to terminate the father's rights through the adoption process.

*Id.* at 13, 381 S.E.2d at 841 (Cozort, J., dissenting).

In N.C.G.S. §§ 48-13 and 48-15 our statutes set out what is necessary for a valid adoption "proceeding" when the child is born out of wedlock. Section 48-15 provides a form to be used for the petition which must be filed. In addition to the filing of the petition, N.C.G.S. § 48-13 provides:

No reference shall be made in any petition, interlocutory decree, or final order of adoption to the marital status of the biological parents of the child sought to be adopted, to their fitness for the care and custody of such child, nor shall any reference be made therein to any child being born out of wedlock.

*In the case of a child born out of wedlock and not legitimated prior to the time of the signing of the consent, an affidavit setting forth such facts sufficient to show that only the consent required under G.S. 48-6 is necessary shall be filed with the petition for adoption.*

N.C.G.S. § 48-13 (1984) (emphasis added). Thus our statutes clearly provide that, in the case of a child born out of wedlock, both the petition set out in N.C.G.S. § 48-15 and an affidavit conforming to the requirements of N.C.G.S. § 48-13 must be filed before a valid adoption proceeding has been instituted.

In the present case, the evidence is undisputed that the petition for adoption was filed, but the termination order, rather than the affidavit required by statute, was filed with the petition. This termination order was invalid because the service by publication

## IN RE ADOPTION OF CLARK

[327 N.C. 61 (1990)]

was void since due diligence was not used to determine Mr. Lampe's address. *In re Clark*, 76 N.C. App. at 87-88, 332 S.E.2d at 199-200. Therefore, there was no valid adoption proceeding begun on 16 February 1984 since only the petition was filed, and the petition by itself is not enough.

Family Services and the adoptive parents argue that the filing of the affidavit is a mere technicality and the failure to file the affidavit by itself is not enough to keep this from being a valid adoption proceeding. We disagree. The statute provides that the petition shall make no reference to the status of the biological parents when the child has been born out of wedlock. N.C.G.S. § 48-13 (1984). The statute then goes on to provide that the information about whether the parent's consent is necessary must be included in an affidavit which *shall* be filed with the petition. *Id.* The purpose of the filing of this affidavit is to allow the clerk of superior court to determine whether the adoption proceeding is properly filed so as to meet the essential requirements of the adoption statutes. This affidavit provides the basis for the clerk to determine if the father is a necessary party to the proceeding. Therefore, failure to file this affidavit is not a mere technicality; it goes to the heart of a valid adoption proceeding.

Since this proceeding was not a valid adoption proceeding, Mr. Lampe's parental rights have not been cut off by the provisions of N.C.G.S. § 48-6(a)(3). This statute provides:

In the case of a child born out of wedlock the consent of the putative father shall not be required unless prior to the filing of the adoption petition:

a. Paternity has been judicially established or acknowledged by affidavit which has been filed in a central registry maintained by the Department of Human Resources; provided, the court shall inquire of the Department of Human Resources as to whether such an affidavit has been so filed and shall incorporate into the case record the Department's certified reply; or

b. The child has been legitimated either by marriage to the mother or in accordance with provisions of G.S. 49-10, a petition for legitimation has been filed; or

c. The putative father has provided substantial support or consistent care with respect to the child and mother.

IN RE ADOPTION OF CLARK

[327 N.C. 61 (1990)]

> Determination under G.S. 48-6(a)(3) that the adoption may proceed without the putative father's consent shall be made only after notice to him pursuant to G.S. 1A-1, Rule 4. This notice shall be titled in the biological name of the child.

N.C.G.S. § 48-6(a)(3) (1984). Mr. Lampe filed a special proceeding in the superior court on 4 May 1984 to legitimate the child. This legitimation proceeding was filed *before* a valid adoption proceeding was filed. Therefore, the provisions of N.C.G.S. § 48-6(a)(3) do not take effect to keep Mr. Lampe from being a necessary party to an adoption proceeding involving his son.

We thus come to the crucial question in this case: when a termination order, later held to be invalid for failure to use due diligence in ascertaining the putative father's address, is filed with an adoption petition in lieu of the affidavit required by N.C.G.S. § 48-13, may a subsequently filed affidavit relate back to the original filing date of the petition so as to cut off the rights of a putative father who filed a legitimation petition pursuant to N.C.G.S. § 49-10 before the affidavit was filed? The trial judge, in effect, gave a negative answer to the question, and the Court of Appeals reversed.

The Court of Appeals concluded that Family Services and the adoptive parents should be allowed under Rule 15 of the Rules of Civil Procedure to amend the adoption petition by filing the necessary affidavit. *In re Adoption of Clark*, 95 N.C. App. at 10, 381 S.E.2d at 840. Rule 15(a) provides that leave to amend "shall be freely given when justice so requires," N.C.G.S. § 1A-1, Rule 15(a) (1983), "unless some material prejudice to the other party is demonstrated." *Mauney v. Morris*, 316 N.C. 67, 72, 340 S.E.2d 397, 400 (1982) (citing *Mangum v. Surles*, 281 N.C. 91, 187 S.E.2d 697 (1972)). The decision to permit or deny an amendment rests within the sound discretion of the trial judge and should not be disturbed on appeal absent a showing of an abuse of that discretion. *Mauney v. Morris*, 316 N.C. at 72, 340 S.E.2d at 400; *Henry v. Deen*, 310 N.C. 75, 310 S.E.2d 326 (1984).

Clearly, in this case where Mr. Lampe could lose his parental rights, and where he has taken action to avoid that very outcome by filing a petition for legitimation after he learned about the birth of his child, Mr. Lampe would be prejudiced by any attempt to relate a filing back to a time when he had no notice of this fact. Mr. Lampe took appropriate action to avoid losing his parental

IN  RE  ADOPTION  OF  CLARK

[327  N.C.  61  (1990)]

rights after he found out about the child, and allowing the affidavit to relate back to the time when he did not know about the child would materially prejudice him. Under these circumstances, the trial judge did not abuse his discretion in not treating the affidavit, submitted two years after the adoption petition, as having been filed with the adoption petition.

Mr. Lampe argued in his brief that his due process and equal protection rights are violated by these adoption statutes which could allow a biological father to lose parental rights to a child when he did not know he had a child. However, since Mr. Lampe's consent is necessary for the adoption in this case to proceed, we need not address these constitutional issues.

For the reasons stated herein, the decision of the Court of Appeals is reversed, and the order of the trial court is reinstated.

Reversed.

Justice WHICHARD dissenting.

I am convinced that the majority in the Court of Appeals correctly held that the adoption proceeding was improperly dismissed and could have gone forward without the consent of the child's putative father. In holding that the trial court did not err in dismissing the adoption petition instead of allowing the affidavit required by N.C.G.S. § 48-13 to relate back to the date the petition was first filed with a copy of the termination order, the majority has mistaken evidence for pleadings, and it has ignored the strong expression of legislative intent set out in the statute. While the machinations of Family Services and of the child's mother to avoid meaningful notification of the putative father are not laudable, in view of the plain language and express purpose of the controlling statutory provisions, neither are they determinative. What ought to determine this case and others like it is the clear, simple, legislative purpose to put the rights and welfare of the adoptive child above the rights of his absent or incapable biological parent.

The statutory scheme for the transfer of parental responsibilities from biological to adoptive parents includes a means of terminating the rights and duties of the former in order to assure that the rights and duties of the latter will be exclusive with regard to the adoptive child. The legislative intent underlying this scheme reflects the following priorities:

IN RE ADOPTION OF CLARK

[327 N.C. 61 (1990)]

[T]he primary purpose of this chapter is to protect children from unnecessary separation from parents who might give them good homes and loving care, . . . and to protect them from interference, long after they have become properly adjusted in their adoptive homes[,] by biological parents who may have some legal claim because of a defect in the adoption procedure. . . . The secondary purpose of this Chapter is . . . to prevent later disturbance of [the adoptive parents'] relationship to the child by biological parents whose legal rights have not been fully protected.

N.C.G.S. § 48-1(1), (2) (1984). This provision concludes with guidance as to how the chapter is to be read and applied: "When the interests of a child and those of an adult are in conflict, such conflict should be resolved in favor of the child; and to that end this Chapter should be liberally construed." N.C.G.S. § 48-1(3) (1984).[1]

At the time Family Services filed its adoption petition, the parental rights of the biological parents of an illegitimate child could be foreclosed in one of three general ways: by consent under N.C.G.S. § 48-7(a) or § 48-9(a)(1); by "termination" under Article 23 (now repealed) or Article 24B of Chapter 7A; or by adjudication of abandonment under Article 24B of Chapter 48. Family Services initially filed a copy of a termination order with its adoption petition on 16 February 1984. As the culmination of the action to terminate parental rights under Article 24B of Chapter 7A, the order established the facts that Family Services had complied in good faith with all pertinent provisions of the statute, including a preliminary hearing to ascertain whether notice was to be served by publication, court-sanctioned notice by publication, and an adjudicatory hearing prior to the issuance of the order itself on 18 January 1984. See N.C.G.S. §§ 7A-289.26(a), (d), 7A-289.30(a), (d), 7A-289.32(6), and 7A-289.33 (1989). The order specified as grounds for terminating the parental rights of the putative father that the father had "not done any of the acts listed in G.S. 7A-289.32(6)." In addition to the termination order, Family Services attached a consent form signed by the agency itself and a "Parent's Release, Surrender, and Consent" form signed by the child's mother, in compliance

---

1. In holding that the adoption petition had been improperly filed and dismissing it without prejudice, the trial court erroneously stated that the adoption statute was to be strictly construed. The statute prescribes that it is to be liberally construed in favor of the child and in favor of the stability of the child in its adoptive home.

with N.C.G.S. §§ 48-7(b) and 48-9(a)(3). When an order terminating parental rights has been filed with the adoption petition, a licensed child-placing agency such as Family Services has the right to give written consent to the adoption of a child in its custody. N.C.G.S. §§ 48-5(f), 48-9(a)(3) (1984 & Cum. Supp. 1989). Such consent, filed with the petition for adoption, is sufficient for purposes of making such an agency a party to the adoption proceeding. N.C.G.S. § 48-9(a) (1984 & Cum. Supp. 1989).

Under the provisions of N.C.G.S. § 7A-289.32(6), the circumstances under which the parental rights of a putative father may be foreclosed are "virtually identical" to those under which an adoption may proceed without the consent of the putative father, in effect terminating his parental rights. *In re Adoption of Clark*, 95 N.C. App. 1, 7, 381 S.E.2d 835, 839 (1989). *See also* N.C.G.S. §§ 48-5 (1984 & Cum. Supp. 1989), 48-6(a)(3) (1984). Among the enumerated acts, the nonfeasance of which may result in the termination of a putative father's rights, is the circumstance whether he has "[l]egitimated the child pursuant to provisions of G.S. 49-10, or filed a petition for that specific purpose." N.C.G.S. § 7A-289.32(6)(b) (1989). *Cf.* N.C.G.S. § 48-6(a)(3) (1984) ("The child has been legitimated either by marriage to the mother or in accordance with provisions of G.S. 49-10, a petition for legitimation has been filed."). By filing a petition to legitimate Daniel James Clark on 4 May 1984, the putative father clearly intended belatedly to nullify such a finding in the termination order and to preclude any subsequent finding under N.C.G.S. § 48-6(a) that he had not performed any act that would have made his consent necessary to the child's adoption. The holding of the majority gives the putative father's belated filing the effect he desires because it affirms the trial court's decision not to allow the affidavit to be substituted for the termination order filed with the adoption petition. In this the majority misapplies the Rules of Civil Procedure and misconstrues the letter and spirit of the adoption statute.

Although the Rules of Civil Procedure generally apply to adoption proceedings, *see In re Adoption of Searle*, 74 N.C. App. 61, 64, 327 S.E.2d 315, 317 (1985), the termination order or affidavit required to obviate a putative father's consent to adoption is not, properly considered, a pleading. A pleading setting forth a claim for relief is "a short and plain statement of the claim sufficiently particular to give the parties and the court notice of the transactions, occurrences, or series of transactions or occurrences, intend-

IN RE ADOPTION OF CLARK

[327 N.C. 61 (1990)]

ed to be proved." N.C.G.S. § 1A-1, Rule 8(a)(1) (1983 & Cum. Supp. 1989). Detailed fact pleading is neither required nor prohibited under our "notice theory" of pleading. *Sutton v. Duke*, 277 N.C. 94, 104-05, 176 S.E.2d 161, 167 (1970). However, the facts underlying a party's statement of its claim should not be confused with the pleading itself, particularly in a case such as this where the evidence underlying the particular averment, attached as a "consent form" to the petition for adoption, was identical in the termination order and the later affidavit.

Properly considered, the pleading involved is the allegation in the petition for adoption that "all necessary parties to this proceeding are properly before the court; and there has been full compliance with the law in regard to the Consent to Adoption filed with this Petition . . . ." The affidavit is not a pleading, but statutorily required evidence supporting the foregoing allegation. The majority thus goes astray in viewing introduction of the affidavit as an amendment to pleadings, which is discretionary with the trial court.

In general, "all relevant evidence is admissible." N.C.G.S. § 8C-1, Rule 402 (1988). The only issue before the trial court here was whether the putative father's consent to the adoption was required. Thus, an affidavit averring that the putative father had performed none of the acts set forth in N.C.G.S. § 7A-289.32(6) that would make his consent to the adoption necessary was clearly relevant and admissible. Ordinarily, a court order terminating the putative father's parental rights for failure to perform any of the acts set forth in N.C.G.S. § 7A-289.32(6) would constitute even more persuasive evidence than a mere affidavit to the same effect. Thus, in attaching the termination order to the petition for adoption, rather than an affidavit, petitioners were offering the evidence required by the statute, but in a more persuasive form.

The termination order, while ruled invalid on procedural grounds, was not invalidated as to its evidentiary substance, to wit, that the putative father had failed to perform in any of the ways necessary to require his consent to the adoption. The affidavit and the contents of the termination order were evidentiary underpinnings to the same averment in the petition for adoption and consent form accompanying it: that the putative father had taken none of the steps described by statute *prior to the filing of either the termination or the adoption petition* that would indicate an

## IN RE ADOPTION OF CLARK

[327 N.C. 61 (1990)]

interest in the child or in the corporeal consequences of his amorous liaison. The substance of the averment did not vary from one document (the termination order) to its proffered substitute (the affidavit): the latter was merely evidence in an admissible form (the affidavit) substituted for the same evidence in a form rendered inadmissible by the invalidation of the termination order. Admitting the substituted evidence in no way would have altered the legal status of the proceeding. The adoption petition, filed on 16 January 1984, was still before the court, as was the consent form signed by the agency in accordance with N.C.G.S. § 48-9(a)(3). The affidavit simply repeated for the record the reason the father's consent was not required: that prior to the filing of the adoption petition, he had not taken any of the steps enumerated in N.C.G.S. § 48-6(a)(3). This evidence was relevant and admissible, and in dismissing the adoption petition for improper filing where the same admissible, relevant evidence in a form different from the invalidated order was before the court, the trial court "truly exalt[ed] form over substance." *Power Co. v. Winebarger*, 300 N.C. 57, 68, 265 S.E.2d 227, 234 (1980). In light of the clear legislative mandate that the adoption statutes are to be construed liberally in favor of the child and its stability in its adoptive home, N.C.G.S. § 48-1, I would hold that it erred in doing so.

The legislature has expressly stated that in adoption proceedings under Chapter 48, the child's interests are to take precedence over the conflicting interests of an adult and the intervention of a biological parent in the child's relationship with his adoptive parents is to be prevented, even when the legal rights of that biological parent may "not have been fully protected." N.C.G.S. § 48-1(1), (2) (1984). The majority's view that relation back of the affidavit was precluded by potential prejudice to the putative father inaccurately characterizes evidence supporting averments as to parental consent as pleadings and exalts form over substance in allowing the exclusion of relevant and admissible evidence. More important, it ignores the stated purpose of the adoption statute, which clearly favors the child's interests over those of his putative parent and promotes the stability of the child in his adoptive home. The child in this case approaches his seventh birthday ignorant of the efforts of his putative father to sever the child's lifelong bond with his adoptive parents and to assume custody. The result reached by the majority does not place the child's interests over the conflicting interests of his biological parent and undermines the stability of

the child in his adoptive home, contrary to clear legislative intent. "[T]he primary purpose of [the adoption statute] is to protect children . . . from interference, long after they have become properly adjusted in their adoptive homes[,] by biological parents who may have some legal claim because of a defect in the adoption procedure." N.C.G.S. § 48-1(1), (2) (1984).

For the foregoing reasons, I respectfully dissent.

Justices MITCHELL and WEBB join in this dissenting opinion.