STANLY COUNTY DEPT. OF SOCIAL SERVICES ex rel. STACY DENNIS, PLAINTIFF/APPELLANT v. JOHN REEDER, JR., DEFENDANT/APPELLEE

No. COA96-1189

(Filed 18 November 1997)

**1. Adoption or Placement for Adoption § 51 (NCI4th)— illegitimate child—consent to adoption—parental rights not terminated**

A father's consent to the adoption of his illegitimate daughter did not terminate his parental rights and obligations. Rather, the final order of adoption would terminate his parental rights.

**2. Adoption or Placement for Adoption § 30 (NCI4th)— illegitimate child—consent to adoption—agreement to terminate support obligation—void as against public policy**

A father's consent to the adoption of his illegitimate daughter violated N.C.G.S. § 48-37 and was void as contrary to public policy where consent was given in exchange for the termination of his child support obligations and the mother's agreement not to pursue either prospective or past child support. Therefore, the father's obligation to provide support continued until entry of a final adoption order, which never occurred, and the consent agreement could not be used to estop the county DSS from seeking reimbursement for public assistance provided for the child subsequent to the consent order.

724 IN THE COURT OF APPEALS

STANLY COUNTY DSS ex rel. DENNIS v. REEDER

[127 N.C. App. 723 (1997)]

Appeal by plaintiff from order entered 21 May 1996 by Judge Joseph J. Williams in Stanly County District Court. Heard in the Court of Appeals 18 August 1997.

On 7 December 1986 Summer Nicole Honeycutt was born to plaintiff Stacy Dennis (then Honeycutt) and defendant John W. Reeder, Jr., who were not married. Pursuant to a Voluntary Support Agreement, filed by plaintiff Stanly County Department of Social Services (DSS) on behalf of plaintiff Stacy Dennis, defendant was ordered on 4 September 1987 to pay child support and repay past paid public assistance.

On or about 26 February 1992, after a hearing upon defendant's motion to establish visitation times, a consent order was entered, terminating defendant's child support and visitation obligations but not releasing him from his obligation to pay public assistance arrears. Defendant agreed to give consent for Randy James Dennis, Honeycutt's new husband, to adopt Summer. The consent order also provided that the mother "expressly waives and relinquishes all sums accrued and payable to her for child support," and that she would not pursue prospective child support or "take any action to create any additional liability" for defendant for prospective public assistance.

However, when Randy and Stacy Dennis separated, and the adoption of Summer did not take place, Stacy Dennis began receiving public assistance again, and plaintiff DSS filed a motion to reopen the child support case.

After a hearing, the trial court denied DSS's motion to reopen the case, concluding "as a matter of law that the Defendant lived up to his terms of the bargain in the February 25, 1992 consent order, which order effectively terminated the parental rights of the Defendant, therefore he is not responsible for the support of the child Summer Honeycutt." Plaintiff appeals.

*Stanly County Department of Social Services, by John W. Webster, for plaintiff appellant.*

*No brief for defendant appellee.*

ARNOLD, Chief Judge.

The essential issue on appeal is whether defendant's consent to the adoption of his child terminated his parental rights. This case falls

under the adoption statutes in effect prior to the 1995 revision of Chapter 48.

The order appealed from, denying DSS's motion to reopen the child support case, is based upon the February 1992 consent order, which included the following findings of fact:

6. Reeder has agreed to execute a consent to adopt the named minor child to Randy James Dennis, the spouse of Honeycutt.

7. Honeycutt has agreed upon entry of this Order in open Court on February 26, 1992, to terminate all obligations of support of the minor child from Reeder.

. . . .

10. In the event Reeder should revoke the consent to adopt, the orders of support shall be reinstated retroactively to this date.

11. Honeycutt expressly waives and relinquishes all sums accrued and payable to her for child support.

Consequently, the consent order required that

(a) Reeder will execute and deliver to Honeycutt a consent to adopt the minor child, Summer Nicole Honeycutt, for Randy James Dennis.

(b) The obligations of child support, including arrears, of Reeder for the minor child is [sic] terminated immediately, and Honeycutt shall not hereafter pursue prospective child support from Reeder.

(c) Reeder shall not pursue nor attempt to exercise visitation with the minor child.

(d) Reeder shall repay to the Department of Social Service [sic] the past public assistance (AFDC) owing, on a schedule arranged with said agency.

(e) Honeycutt shall not take any action to create any additional liability for Reeder to the Department of Social Services nor the State of North Carolina for prospective public assistance.

(f) In the event of Reeder's failure or refusal to execute the consent to adopt, any extension thereof, or the revocation of a consent to adopt, the orders of support shall be reinstated retroactively to this date.

On 21 May 1996 the trial court dismissed plaintiff's motion to reopen the child support case, finding, *inter alia*:

2. That by a consent order dated February 25, 1992 . . . the Defendant terminated support for his minor child, Summer Honeycutt . . . .

3. That the Defendant agreed in the consent order to execute a consent to adopt the minor child to Randy James Dennis, the spouse of the Plaintiff at that time; that such consent was signed but that the adoption was not completed.

4. That the Defendant agreed and was ordered not to pursue nor attempt to exercise visitation with the minor child.

Based on these findings, the court concluded "as a matter of law that the Defendant lived up to his terms of the bargain in the February 25, 1992 consent order, *which order effectively terminated the parental rights of the Defendant,* therefore he is not responsible for the support of the child Summer Honeycutt." (Emphasis added.)

While termination of a father's rights *may* precede an adoption petition, prior termination under Chapter 7A is not necessary if the father's consent to the adoption is not required under the applicable provisions of Chapter 48. *In re Adoption of Clark,* 95 N.C. App. 1, 7, 381 S.E.2d 835, 838 (1989), *rev'd on other grounds,* 327 N.C. 61, 393 S.E.2d 791 (1990). Instead, his parental rights are then terminated by the final order of adoption under N.C. Gen. Stat. § 48-23 (1991). *In re Adoption of Clark,* 95 N.C. App. at 7, 381 S.E.2d at 838.

[1] Although defendant in this case gave consent for Randy Dennis to adopt his daughter, clearly such consent did not act to terminate his parental rights and obligations. Section 48-23(2) plainly states: "The biological parents of the person adopted, if living, shall, *from and after the entry of the final order of adoption,* be relieved of all legal duties and obligations due from them to the person adopted, and shall be divested of all rights with respect to such person." G.S. § 48-23(2) (emphasis added); *see In re Adoption of Clark,* 95 N.C. App. at 7, 381 S.E.2d at 838. The adoption statutes provide that an adoption can take place only after consent by the natural parent, when such consent is necessary, unless parental rights have already been terminated otherwise. *See* N.C. Gen. Stat. §§ 48-5, -6, -7 (1991). If, as the trial court erroneously concluded below, a father's consent to adoption effectively terminates his parental rights, the language of G.S. § 48-23(2), which provides that parental rights are terminated

"from and after the entry of the final order of adoption," would be mere surplusage. Absent prior formal proceedings terminating parental rights under Article 24B of Chapter 7A, the final order of adoption, and not the *consent* to adoption, terminates parental rights. *See Rhodes v. Henderson*, 14 N.C. App. 404, 407, 188 S.E.2d 565, 567 (1972) (final decree of adoption terminates the relationship between natural parent and child).

**[2]** Moreover, in this case the father's consent to the adoption of his child was void as against public policy. The February 1992 consent order essentially provided that defendant agreed to execute a consent to adopt in exchange for the mother's express waiver and relinquishment of "all sums accrued and payable to her for child support" and her agreement not to pursue prospective child support. In *State ex rel. Raines v. Gilbert*, 117 N.C. App. 129, 450 S.E.2d 1 (1994), this Court held: "A person who gives or receives *any consideration* for 'receiving or placing . . . any child for adoption' . . . acts contrary to the public policy of North Carolina." *Id.* at 131, 450 S.E.2d at 2 (quoting G.S. § 48-37 (1991)). Agreements that are contrary to public policy are void. *Id.*

In *Raines*, the trial court concluded that the mother was equitably estopped from collecting child support arrears because she had promised she would not pursue an action for child support arrears in exchange for the father's consent to the adoption. *Id.* This Court found that such an agreement violated G.S. § 48-37 "in that both the Mother and the Father gave and received consideration for the placement of the child for adoption." *Raines*, 117 N.C. App. at 131, 450 S.E.2d at 2.

Likewise, in this case defendant's agreement to consent to the adoption of his child violated G.S. § 48-37 and was void as contrary to public policy, in that it was in exchange for the termination of his child support obligations and the mother's agreement not to pursue child support, either prospective or in arrears. Therefore, the consent agreement cannot be used to estop DSS from reopening the child support case and seeking reimbursement for the public assistance paid subsequent to the consent order.

In *State of Michigan v. Pruitt*, 94 N.C. App. 713, 380 S.E.2d 809 (1989), this Court found that in the absence of evidence that the mother waived her right to past due child support payments, the subsequent adoption did not affect the father's pre-adoption obligation to provide support for his children. *Id.* at 715, 380 S.E.2d at 810. "The

father's obligation to provide support for his children was a continuing one which ceased only when the children were adopted by their stepfather." *Id.*

Because we find that the provisions of the consent order relieving defendant of past and future child support obligations in exchange for giving consent to adoption of his child are void as against public policy, defendant's obligation to provide support is continuing until the entry of a final adoption order, which has never taken place.

Our reading of the intended policy and effect of the adoption statutes is supported by the 1995 amendments, which clarify the parental rights of a parent who has given consent to adoption of a child:

> Any other parental right and duty of a parent who executed a consent is not terminated until either the decree of adoption becomes final or the relationship of parent and child is otherwise terminated, whichever comes first. Until termination, the minor remains the child of a parent who executed a consent for purposes of any inheritance, succession, insurance, arrears of child support, and other benefit or claim that the minor may have from, through, or against the parent.

N.C. Gen. Stat. § 48-3-607(c) (1995).

Defendant's parental rights and obligations were not terminated by virtue of his consent to the adoption of his child, and the trial court erred in so ruling. The order denying plaintiff's motion to reopen the child support case is

Reversed.

Judges WALKER and McGEE concur.