[No. H008727. Sixth Dist. Nov. 5, 1991.]

ERIC M. McARTHUR, Petitioner, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY, Respondent;
SUSAN M. McARTHUR WELLS, Real Party in Interest.

**COUNSEL**

Bradford Baugh for Petitioner.

No appearance for Respondent.

Paul S. Nesse for Real Party in Interest.

OPINION

**CAPACCIOLI, Acting P. J.**—This is a petition for mandate or prohibition arising under the Uniform Child Custody Jurisdiction Act (UCCJA, Civ. Code, § 5150 et seq.) and raising questions of modification jurisdiction and personal jurisdiction over the out-of-state parent.

The parties were divorced in Ohio. The Ohio court decree provided for child custody and support. The custodial parent, the mother, then moved to California. We must decide whether the mother may invoke California jurisdiction to seek modification of the Ohio decree and to assert personal jurisdiction over the father, who has remained in Ohio. Father asserts there is neither personal jurisdiction over him nor subject matter jurisdiction under the UCCJA and petitions this court for an extraordinary writ quashing service on him and terminating the California proceeding. For reasons we will state, we will issue the writ.

FACTS

Residents of Ohio, the parties obtained an Ohio divorce decree in 1989. They have two children born January 1, 1983, and September 30, 1985. The divorce degree incorporated the parties' separation agreement, which divided their property and awarded physical custody of the children to mother, visitation rights for father. After the divorce, mother moved to California in July 1990. In anticipation of that move, the Ohio court on June 22, 1990, filed a modification of its decree providing for visitation in California.

On April 10, 1991, mother filed a petition in the Santa Clara County Superior court seeking to establish UCCJA jurisdiction, to modify child support and visitation, and to obtain compelled mediation, attorney's fees, and related relief. On that petition she indicated that she sought to enforce the Ohio decree, but she also asked that it be modified by increasing the amount of child support and the terms of visitation. She served father in Ohio. She has filed no pleading purporting to register the Ohio decree in California under the UCCJA. (See Civ. Code,[1] § 5164.) However, in opposition here, she says that her Santa Clara county petition constitutes an attempt to enforce the Ohio decree.

Father made a special appearance to contest jurisdiction and asked the court to quash service on him. He has filed no action in the Ohio court and asserts no present conflict of jurisdiction. However he claims exclusive modification jurisdiction rests in Ohio unless that court is asked to, and does,

---

[1] Further statutory references are to the Civil Code unless otherwise stated.

decline jurisdiction. The Santa Clara court has not communicated with the Ohio court in this matter.

The trial court held (1) that there is personal jurisdiction over father and (2) that the California court has subject matter jurisdiction over the children's custody. It based that conclusion on the facts that the children had lived in California for more than six months before filing of the petition, and that their best interests would be served by assumption of jurisdiction here due to significant connection with this state and availability of substantial evidence here. The finding of personal jurisdiction recited that it was based on the fact that father came to California to visit the children and while here used his wife's credit cards. The only evidence of that fact is argument and an offer of proof at the hearing that during a five-day visit to the children in Santa Clara County father used mother's credit card for convenience to pay his hotel bill.

## DISCUSSION

In the trial court mother's counsel relied inter alia on the decision in *In re Marriage of Leonard* (1981) 122 Cal.App.3d 443 [175 Cal.Rptr. 903], hereafter *Leonard*. However that decision has been questioned, and its validity substantially undermined, by the Supreme Court decision in *Kumar v. Superior Court* (1982) 32 Cal.3d 689 [186 Cal.Rptr. 772, 652 P.2d 1003]. (See especially at p. 699, fn. 12.) In *Leonard*, after Georgia rendered the initial divorce and custody-determining decree, father relocated to California and sought modification awarding him custody although mother remained in Georgia. The California court found jurisdiction to modify under the UCCJA because California satisfied the jurisdictional tests of the UCCJA of "home state" and "significant connections." (§ 5152, subds. (a), (b).)

The *Leonard* court did not analyze section 5163 which concerns modification of the custody decree of another state and which provides that a court of this state "shall not modify" an out-of-state custody decree unless the rendering court no longer has jurisdiction under the jurisdictional standards of the UCCJA, and this state does have such jurisdiction.

The decision in *Kumar* disagreed with *Leonard* and specifically pointed out that *Leonard* (and other decisions) erroneously have assumed the existence of concurrent modification jurisdiction in the rendering and the forum state. (See *Kumar v. Superior Court, supra*, 32 Cal.3d at p. 699, fn. 12.) *Kumar* held that there is no concurrent modification jurisdiction so long as at least one parent remains in the rendering state unless the decree state "loses all or almost all connection with the child." (*Id.* at p. 699.) *Kumar* referred to

*Leonard* and other cases as perpetuating a "myth of concurrent modification jurisdiction." (*Ibid.*) *Kumar* quotes from the analysis of Professor Bodenheimer, reporter for the special committee which drafted the UCCJA, which concludes that exclusive jurisdiction continues in the rendering state so long as at least one parent remains there, even though a new state has become the child's "home state" (residence for at least six months). (*Id.* at p. 696.) " 'Although the new state becomes the child's home state, significant connection jurisdiction continues in the state of the prior decree where the court record and other evidence exists and where one parent or another contestant continues to reside. *Only when the child and all parties have moved away is deference to another state's continuing jurisdiction no longer required.*' " (*Ibid.*, italics in original; quoting from Bodenheimer, *Interstate Custody: Initial Jurisdiction and Continuing Jurisdiction Under the UCCJA* (1981) 14 Fam.L.Q. 203, 214-215.)

We followed *Kumar* in *Souza* v. *Superior Court* (1987) 193 Cal.App.3d 1304 [238 Cal.Rptr. 892], where we held that Santa Cruz County Superior Court had no modification jurisdiction over a Hawaii decree unless and until Hawaii determined that its jurisdiction had evaporated over time and decided therefore to relinquish jurisdiction. We reached that result although the mother took the child to California after the Hawaii divorce and had lived there more than three years before she instituted stepparent adoption proceedings in California. We found that so long as the father remained in Hawaii, Hawaii retained primary jurisdiction and was the proper forum to decide whether the lack of contact between father and child was due to his abandonment (in which case jurisdiction in Hawaii would be lost by attenuation) or was rather due to concealment of the child by mother (in which case jurisdiction would remain in Hawaii, the rendering state).

There is but one distinguishing fact between *Kumar* and *Souza*, on the one hand, and the instant case. In *Kumar* and in *Souza* the noncustodial parent actively sought to litigate the matter in the state of his residence, also the rendering state (New York and Hawaii, respectively). Here, father has not actually filed an action in Ohio. Therefore there are no conflicting proceedings here. Accordingly mother's counsel argues that there is no reason under the UCCJA for Santa Clara not to assume jurisdiction; to do so would not invoke the spectre of courts on collision courses which the UCCJA seeks to prevent.

However, the existence of actual jurisdictional conflict is not mentioned in the UCCJA, in *Kumar*, or in *Souza*. Rather the act states, in section 5163, that there shall be no modification unless there is loss of jurisdiction or declination of jurisdiction in the rendering state. Both *Kumar* and *Souza* rest on that statute. The inevitable implication from the statute and from these

decisions is that exclusive modification jurisdiction rests in the rendering state, whether or not that jurisdiction has been presently invoked. Accordingly, even if there is no presently pending proceeding in Ohio, the Santa Clara court must nevertheless communicate with the Ohio court as to whether it considers that it has jurisdiction. If Ohio does, the modification request must be addressed there. If Ohio does not, then it has declined jurisdiction within section 5163 and Santa Clara may assume jurisdiction.

The trial court here rested its decision on the existence of UCCJA jurisdictional factors in California, namely, home state and significant connection. To do so was error, the same error in *Leonard* of assuming concurrent modification jurisdiction in the rendering and forum states (here, Ohio and California.) The trial court believed that if there is a jurisdictional basis under the UCCJA in California, then the action may be maintained here. But the UCCJA and the decisions referred to above hold that the rendering state has exclusive jurisdiction to modify the decree unless the jurisdictional basis in that state is utterly eroded.

No case defines precisely what would constitute total erosion of jurisdiction in the rendering state. Here it is plain there is still jurisdiction in Ohio, where one parent remains and where the remaining parent and the child moved less than one year before the UCCJA action was filed in California. Further, the Ohio decree expressly provided for visitation in California, an assertion of jurisdiction over the question of custody despite the mother's move. Therefore, it must be concluded that the Ohio court not only has not lost jurisdiction, but has in fact exercised it. The Santa Clara County court should have communicated with the Ohio court to ascertain whether under these circumstances it would continue to exercise jurisdiction.

We turn to the question of personal jurisdiction over the father. ██ We believe that there is no basis here for a finding of personal jurisdiction. ██ Due process requires personal jurisdiction over a party on whom support obligations are to be imposed, and that jurisdiction must rest on sufficient contacts with the forum state as to make imposition of jurisdiction reasonable under normally applicable standards. (*Kulko* v. *California Superior Court* (1978) 436 U.S. 84, 88 [56 L.Ed.2d 132, 138-139, 98 S.Ct. 1690]; *Shaffer* v. *Heitner* (1977) 433 U.S. 186, 213 [53 L.Ed.2d 683, 703-704, 97 S.Ct. 2569].) Those standards require either "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws," (*Hanson* v. *Denckla* (1958) 357 U.S. 235, 253 [2 L.Ed.2d 1283, 1298, 78 S.Ct. 1228]), or other contacts making the exercise of jurisdiction reasonable. (E.g. *Burger King Corp.* v. *Rudzewicz* (1985) 471 U.S. 462, 477-478 [85 L.Ed.2d 528, 543-545, 105 S.Ct. 2174].) In the context of family law, the

parent's consent to the residence in another state of the former spouse and child is an insufficient basis for personal jurisdiction. (*Kulko* v. *California Superior Court, supra,* 436 U.S. at p. 94 [56 L.Ed.2d at pp. 142-143].) Similarly insufficient is the parent's presence in the forum state solely to exercise rights under the out-of-state decree. (See *Kumar* v. *Superior Court, supra,* 32 Cal.3d. at p. 694.)

California decisions have upheld personal jurisdiction over nonresident spouses where there were such contacts with California as to make exercise of such jurisdiction consonant with due process standards. (These decisions are collected, e.g., in *In re Marriage of Hattis* (1987) 196 Cal.App.3d 1162, 1172-1173 [242 Cal.Rptr. 410]; see also 1 Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 1980) ¶¶ 3:31-3:32 rev. 1, 1991.) Such contacts generally include either residence for periods of time in California (e.g. *In re Marriage of Hattis, supra,* 196 Cal.App.3d 1162), birth of the children here (e.g. *Bergan* v. *Bergan* (1981) 114 Cal.App.3d 567, 570-571 [170 Cal.Rptr. 751]), or abandonment of the family here. (E.g. *In re Marriage of Lontos* (1979) 89 Cal.App.3d 61 [152 Cal.Rptr. 271]; *McGlothen* v. *Superior Court* (1981) 121 Cal.App.3d 106 [175 Cal.Rptr. 129].)

 No such contacts are present here. The father's presence in California solely in order to visit the children is no more a fair basis to exert jurisdiction over him than existed in *Kumar,* where it was found insufficient that father came into California seeking process (a writ) to return the child. The added fact that he borrowed his wife's credit card does not add much weight to the jurisdictional claim. Obviously there would be jurisdiction over him for purposes of enforcing the Ohio decree; provision for this exists in the UCCJA and in the sister state registration statutes as well. (See §§ 5164-5165; Code Civ. Proc., § 1698 et seq.) But there is no basis for personal jurisdiction over him in order to secure and enforce a new and different California decree. The opposition cites not one case premising personal jurisdiction in a child support case upon glancing presence in California to exercise visitation coupled with a borrowing of wife's credit cards for emergency cash needs.

 In opposition mother argues that extraordinary relief is not warranted because so far Santa Clara has not attempted any modification of the Ohio decree. We disagree. She says she is merely enforcing it by bringing this petition. We agree that California has jurisdiction to enforce the Ohio decree. (See § 5164, *supra,* and Code Civ. Proc., § 1698.) But regardless whether petitioner captioned her pleading as an "enforcement" of the Ohio decree, in substance she seeks relief which cannot be characterized as enforcement. Specifically, she seeks increased child support and a change in the nature of visitation. The declaration attached to the petition specifically says "I request

a modification of visitation." Although it is true that the Santa Clara court has not yet granted such relief, it has declared that it has a jurisdictional basis to do so.

Accordingly we will issue the writ of prohibition to prevent further litigation of this matter in Santa Clara County unless the Ohio court declines jurisdiction, and we will further quash the service of summons on father. We encourage the trial court to communicate with the Ohio court in accordance with the principles of the UCCJA. (See §§ 5155, subd. (2), 5167-5169.)

Real party in interest has been notified that a peremptory writ in the first instance could be issued here, and she has filed opposition. The peremptory writ of mandate will issue in the first instance. (Code Civ. Proc., § 1088; *Palma* v. *U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 177-182 [203 Cal.Rptr. 626, 681 P.2d 893].)

Let a writ of prohibition issue as prayed, ordering 1he trial court to quash service of summons upon petitioner and dismiss the proceedings insofar as real party in interest attempts to exert personal jurisdiction over petitioner; and further ordering the trial court to cease and desist from taking any further action in this matter regarding modification of custody or visitation without first communicating with the Common Pleas Court of Greene County, Ohio, Division of Domestic Relations, and ascertaining whether that court will decline jurisdiction over the custody of the parties' children. As the prevailing party, petitioner shall have costs and fees in this proceeding.

Premo, J., and Bamattre-Manoukian, J., concurred.