**IN RE DIXON**

[112 N.C. App. 248 (1993)]

IN THE MATTER OF: BABY BOY DIXON

No. 9226DC981

(Filed 5 October 1993)

**Parent and Child § 111 (NCI4th)— petition to terminate parental rights—nonresident father—paternity not established, no legitimation, no financial support—minimum contacts not required**

The trial court erred by dismissing a termination of parental rights petition against a father who had insufficient minimum contacts with North Carolina to satisfy due process guarantees. Because the facts in this case relate to the termination of the parental rights of a father of a child born out of wedlock who has not acknowledged paternity, legitimated his child, or supported the child and mother in any way, the case is not controlled by *In re Finnican*, 104 N.C. App. 157 and *In re Trueman*, 99 N.C. App. 579. A father's constitutional right to due process of law does not "spring full-blown from the biological connection between parent and child" but instead arises only where the father demonstrates a commitment to the responsibilities of parenthood. "Traditional notions of fair play and substantial justice" are not offended by permitting the petitioner to proceed with terminating the father's parental rights in the absence of his minimum contacts with this State; notice by publication was given. N.C.G.S. § 7A-289.27.

**Am Jur 2d, Parent and Child §§ 34, 35.**

**Validity of state statute providing for termination of parental rights. 22 ALR4th 774.**

Appeal by petitioner from order entered 4 August 1992 in Mecklenburg County District Court by Judge Resa L. Harris. Heard in the Court of Appeals 15 September 1993.

*Richard A. Lucey for petitioner-appellant Catholic Social Services of the Diocese of Charlotte, N.C., Inc.*

*Donald S. Gillespie, Jr., Attorney-Guardian ad Litem for the juvenile.*

GREENE, Judge.

Catholic Social Services of the Diocese of Charlotte, N.C., Inc. (petitioner) appeals from an order entered 4 August 1992, dismissing its petition to terminate the parental rights of Damon Edwards (respondent) for lack of personal jurisdiction.

The record reveals that Dionne DeShawn Dixon (Dixon) was a student at Hampton University in Hampton, Virginia in the fall of 1990 when she met the respondent, an employee in the cafeteria at the Hampton University Student Union. The respondent and Dixon had only one date in either October or November of 1990. On that date, they engaged in sexual relations which resulted in Dixon's pregnancy. After learning of her pregnancy, Dixon inquired of respondent at the Student Union and was advised that he was no longer employed there.

Subsequently, on 3 August 1991, Dixon gave birth to a baby boy in Winston-Salem, Forsyth County, North Carolina. On 13 August 1991, Dixon released her parental rights and surrendered the child for adoption pursuant to N.C. Gen. Stat. § 48-9(a)(1) to petitioner, a private child-placing agency licensed by the Department of Human Resources in accordance with Chapter 48. Baby Boy Dixon was placed at risk in an adoptive home under the supervision of the Department of Social Services of Duplin County, North Carolina on 31 October 1991.

In August and September of 1991, petitioner made repeated attempts to locate respondent through certified letters and phone calls to respondent's last known address, Hampton University, Hampton directory assistance, respondent's former employer, the Department of Motor Vehicles, and the Hampton Police Department. All attempts proved futile and petitioner was unable to secure respondent's release of the child. On 14 November 1991, petitioner filed a petition in Mecklenburg County District Court seeking termination of respondent's parental rights. Service was unsuccessfully attempted at respondent's last known address. Notice of service of process by publication was obtained on the respondent through publication in The Hampton Daily Press. Respondent did not file an answer or response within the 40-day period as required by N.C. Gen. Stat. § 1A-1, Rule 4(j1) (1990).

On 18 May 1992, a guardian ad litem was appointed for Baby Boy Dixon. The guardian ad litem submitted a report in favor

of terminating respondent's parental rights as in the best interests of the child. Although finding sufficient grounds for terminating respondent's parental rights pursuant to N.C. Gen. Stat. § 7A-289.32(6) and finding termination in the best interests of the child, the trial court dismissed the petition because "[t]his Court is bound to follow . . . the holding in In Re Finnican, 104 NC [App.] 157, 408 SE2d 742 (1991), [c]ert. den[ied], 330 NC 612 (1992) . . . that the Court may not grant the termination of parental rights as to the father who has insufficient minimum contacts with the State of North Carolina to satisfy due process guarantees."

The issue presented is whether personal jurisdiction requires minimum contacts with the State of North Carolina in a petition to terminate the parental rights of a non-resident father of a child born out of wedlock who has failed to establish paternity, legitimate his child, or provide substantial financial support or care to the child and mother.

Generally, whether a trial court has personal jurisdiction over a non-resident defendant "depends upon whether (1) our legislature has authorized our courts to exercise personal jurisdiction over the defendant in the action, (2) the plaintiff has properly notified the defendant of the action, and (3) the defendant has 'minimum contacts' with this State." *Harris v. Harris*, 104 N.C. App. 574, 577, 410 S.E.2d 527, 529 (1991). This Court has applied these general rules in the context of a termination of parental rights proceeding filed against the father of a child born in wedlock, holding that minimum contacts was required. *In re Finnican*, 104 N.C. App. 157, 161-62, 408 S.E.2d 742, 745 (1991), *cert. denied*, 330 N.C. 612, 413 S.E.2d 800, *overruled on different grounds by Bryson v. Sullivan*, 330 N.C. 644, 663, 412 S.E.2d 327, 337 (1992); *In re Trueman*, 99 N.C. App. 579, 581, 393 S.E.2d 569, 570 (1990).

The petitioner argues that because the facts in this case relate to the termination of the parental rights of a father of a child born out of wedlock who has not acknowledged paternity, legitimated his child, or supported the child and mother in any way, we are not controlled by *In re Finnican* and *In re Trueman*. We agree.

The requirement of minimum contacts for personal jurisdiction protects a person's due process rights by insuring that maintenance of a suit does not "offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310,

316, 90 L. Ed. 95, 102 (1945). In some circumstances, however, "fair play and substantial justice" do not necessitate minimum contacts with the forum state or notice to the party. For example, the trial courts of this state may, consistent with the due process clause, "enter a child custody decree in the absence of 'minimum contacts' by the non-resident defendant." *Harris*, 104 N.C. App. at 579, 410 S.E.2d at 530. For another example, the father of a child born out of wedlock does not have, under the constitution, an absolute right to notice and an opportunity to be heard before his child can be adopted. *Lehr v. Robertson*, 463 U.S. 248, 77 L. Ed. 2d 614 (1983). As stated by the United States Supreme Court:

> The significance of the biological connection is that it offers the natural father an opportunity that no other male possesses to develop a relationship with his offspring. If he grasps that opportunity and accepts some measure of responsibility for the child's future, he may enjoy the blessings of the parent-child relationship and make uniquely valuable contributions to the child's development. If he fails to do so, the Federal Constitution will not automatically compel a State to listen to his opinion of where the child's best interests lie.

*Id.* at 262, 77 L. Ed. 2d at 627. Thus, a father's constitutional right to due process of law does not "spring full-blown from the biological connection between parent and child" but instead arises only where the father demonstrates a commitment to the responsibilities of parenthood. *Id.* at 260, 77 L. Ed. 2d at 626.

The North Carolina Legislature has provided a method for a putative father to demonstrate his commitment to the child, and it requires the father to take steps to either establish paternity, legitimate the child, or provide "substantial financial support or consistent care with respect to the child and mother." N.C.G.S. § 7A-289.32(6) (Supp. 1992). In this case, the father, having the responsibility to "discover the birth of [his] . . . illegitimate [child]," *In re Clark*, 95 N.C. App. 1, 9, 381 S.E.2d 835, 840 (1989), *rev'd on other grounds*, 327 N.C. 61, 393 S.E.2d 791 (1990), failed, although he had ample opportunity to do so, to take any of the statutory steps to demonstrate his commitment to the child. We need not decide whether a petition filed less than two and a half months after the child is born provides a putative father with an "opportunity," as that term is used in *Lehr*, to demonstrate his commitment to the child. *See Raquel Marie X*, 76 N.Y.2d 387, 405, 559

N.E.2d 418, 426, *cert. denied, sub nom. Robert C. v. Miguel T.*, 498 U.S. 984, 112 L. Ed. 2d 528 (1990) (holding that father of new-born child is entitled to an "opportunity" to demonstrate paternal interest).

In this case, "traditional notions of fair play and substantial justice" are not offended by permitting the petitioner to proceed with terminating the father's parental rights in the absence of his minimum contacts with this State, and the order of the trial court must be reversed. We do note, without deciding whether it is constitutionally required, that the legislature has provided that any parent, including a putative father, is entitled to notice of the termination proceeding, N.C.G.S. § 7A-289.27, and that notice by publication was given in this case.

Reversed and remanded.

Judges EAGLES and ORR concur.