IN THE SUPREME COURT OF NORTH CAROLINA

No. 129A19

Filed 5 June 2020

IN THE MATTER OF: F.S.T.Y., A.A.L.Y.

Appeal pursuant to N.C.G.S. § 7A-27(a)(5) from two orders entered on 13 December 2018 by Judge Mary F. Covington in District Court, Davidson County. Heard in the Supreme Court on 9 December 2019.

*Sheri Woodyard, for petitioner-appellee Davidson County Department of Social Services.*

*Forrest Firm, P.C., by Brian C. Bernhardt, for appellee Guardian ad Litem.*

*Richard Croutharmel for respondent-appellant father.*

BEASLEY, Chief Justice.

The issue before the Court is whether due process requires that a nonresident parent have minimum contacts with the State of North Carolina in order to establish personal jurisdiction over him or her for purposes of termination of parental rights proceedings. Because we hold that the status exception to the minimum contacts requirement applies to termination of parental rights proceedings, we affirm the trial court's order terminating respondent-father's parental rights.

I.

F.S.T.Y. (Florence) and A.A.L.Y. (Abigail)[1] are twin sisters who were born in South Carolina in August 2004. Their mother, Laura, and respondent-father were unmarried when the twins were born but eventually married two months following the twins' birth. In May 2007, respondent-father was incarcerated for burglary. Laura then moved Florence and Abigail to North Carolina. Davidson County Department of Social Services (DSS) became involved with Laura and the twins in January 2011, due to Laura's substance abuse, homelessness, and improper care of the children.

On 9 May 2016, a police officer conducted a traffic stop on a car containing Laura and the twins' maternal grandmother. Both were arrested for possession of drug paraphernalia, misdemeanor child abuse, possession of heroin, and possession of cocaine. On 11 May 2016, DSS filed juvenile petitions alleging neglect and dependency of the twins. After a hearing, the court issued an order adjudicating the twins as neglected, placed the children in DSS custody, and ordered their mother and respondent-father to comply with a case plan.

Respondent-father did not request representation and was not present at the adjudication hearing, but the court appointed an attorney to appear on his behalf. During the hearing, the court acknowledged that respondent-father was a resident of

---

[1] A pseudonym is used to protect the juveniles' identities and for ease of reading.

South Carolina and ordered him to contact DSS upon his release from prison to set visitation. There were several hearings in the following months. Respondent-father was represented by an attorney at some of these proceedings; at others, he was not represented.

Reunification efforts ceased following a hearing on 3 May 2017, and DSS filed termination of parental rights petitions on 3 November 2017. Subsequently, respondent-father filed a motion to dismiss for lack of personal jurisdiction. The trial court ultimately denied respondent-father's motion to dismiss and terminated his parental rights. The court found that respondent-father had not provided substantial financial assistance or care for the children before they were placed into DSS custody. Furthermore, respondent-father's release date continued to be extended for infractions, and respondent-father failed to maintain contact with Florence and Abigail.

Respondent-father appealed the trial court's orders terminating his parental rights in both children, arguing that the trial court lacked personal jurisdiction to terminate his parental rights because he lacked minimum contacts with North Carolina.

II.

The Due Process Clause of the Fourteenth Amendment prevents states from rendering valid judgments against nonresidents. *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291 (1980) (citing *Kulko v. California Superior Court*, 436 U.S. 84, 91 (1978)). Due process requires that a nonresident against whom relief is sought be provided adequate notice of the suit and be subject to the personal jurisdiction of the court. *Id.* (citing *Mullane v. Cent. Hanover Tr. Co.*, 339 U.S. 306, 313–314 (1950) and *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945)).

Personal jurisdiction refers to a court's authority to require an individual to appear in the forum and defend an action brought against the individual in that forum. Before a court can exercise power over the individual, due process generally requires that the nonresident possess sufficient "minimum contacts" with the forum state so "that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' "*Int'l Shoe Co.*, 326 U.S. at 316 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

The minimum contacts requirement furthers two goals: (1) "it safeguards the defendant from being required to defend an action in a distant or inconvenient forum"; and (2) "it prevents a state from escaping the restraints imposed upon it by its status as a coequal sovereign in a federal system." *Miller v. Kite*, 313 N.C. 474,

477, 329 S.E.2d 663, 665 (1985) (citing *World-Wide Volkswagen*, 444 U.S. 286 (1980)). These protections are usually described in terms of "fairness" and "reasonableness." *World-Wide Volkswagen*, 444 U.S. at 292. The Supreme Court of the United States has explained that "reasonableness" requires that, while the burden on the nonresident is always a primary concern, other relevant factors, including the state's interest, will be considered when appropriate. *Id.*

In addition to satisfying the constitutional requirement, courts must also satisfy the state's statutory requirements in order to render a valid judgment against a nonresident. North Carolina's long-arm statute provides, in relevant part, that the State may exercise personal jurisdiction over a nonresident in actions "brought under Statutes of this State that specifically confer grounds for personal jurisdiction." N.C.G.S. § 1-75.4(2) (2019).

The North Carolina Juvenile Code provides that the courts of this State shall have "exclusive original jurisdiction" over termination of parental rights cases involving "any juvenile who resides in, is found in, or is in the legal or actual custody of a county department of social services or licensed child-placing agency in the district" at the time of filing, provided that the requirements of N.C.G.S. §§ 50A-201, -203, or -204 of the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) are met. N.C.G.S. § 7B-1101 (2019).

The UCCJEA is a uniform state law that has been adopted by nearly all fifty states, including North Carolina. The relevant language in the UCCJEA as adopted

by this State provides that "physical presence of, or personal jurisdiction over, a party or a child is not necessary or sufficient to make a child-custody determination." N.C.G.S. § 50A-201(c) (2019).

Respondent-father argues that although exercise of jurisdiction over him comports with North Carolina's statutory requirements, those requirements do not comport with constitutional due process requirements. We disagree.

This is an issue of first impression for the Court, and while this Court has not considered the requirements of due process as they relate to termination of parental rights, the Court of Appeals has developed a line of case law in which minimum contacts are required only in instances in which the child or children were born in wedlock. *Compare In re Finnican*, 104 N.C. App. 157, 162, 408 S.E.2d 742, 745 (1991), overruled on different grounds by *Bryson v. Sullivan*, 330 N.C. 644, 663, 412 S.E.2d 327, 337 (1992) (holding that minimum contacts were required when the child was born in wedlock); *and In re Trueman*, 99 N.C. App. 579, 581, 393 S.E.2d 569, 570 (1990) (stating the same rule); *with In re Dixon*, 112 N.C. App. 248, 252, 435 S.E.2d 352, 354 (1993) (holding that minimum contacts are not required when the child is born out of wedlock and the father has not taken appropriate steps to legitimate the child, provide support for the child and mother, or establish paternity).

In *Trueman*, the father and mother were married and had a child. Later, the parties separated, and the mother moved to North Carolina with the child. *Trueman*, 99 N.C. App. at 581, 393 S.E.2d at 570. The district court in North Carolina entered

a judgment awarding the mother custody of the child and an absolute divorce from the father. *Id.* at 580, 393 S.E.2d at 570. The mother then filed an action for child support, which was granted and transferred to Wisconsin where the father resided. *Id.* at 581, 393 S.E.2d at 570. The father failed to make any payments, so the mother initiated a termination proceeding against him, and the termination was granted.. The father was not present for the custody, divorce, or termination proceedings. *Id.*

The Court of Appeals relied on this Court's decision in *Miller v. Kite*, 313 N.C. 474, 329 S.E.2d 663 (1985), which held that determining whether personal jurisdiction exists requires the court to employ a two-step analysis. "First, it should be ascertained whether the statutes of this State allow our courts to entertain the action the plaintiff has brought against the defendant." *Miller*, 313 N.C. at 476, 329 S.E.2d at 665. If so, the court must then determine if the minimum contact requirement is met. *Id.* at 476–77, 329 S.E.2d at 665.

Thus in *Trueman*, the Court of Appeals held that although a suit to adjudicate a "status" between a parent and child was an *in rem* proceeding, the constitutional requirement, as set out in *International Shoe*, requires that a state's exercise of jurisdiction over a nonresident be consistent with due process requirements.[2]

---

[2] The Court of Appeals continued to interpret due process in accordance with its decision in *Trueman* in cases involving children born in wedlock. *See, e.g., In re Finnican*, 104 N.C. App. 157, 408 S.E.2d 742 (1991), overruled on different grounds *by Bryson v. Sullivan*, 330 N.C. 644, 663, 412 S.E.2d 327, 337 (1992) (looking to its earlier decision in *Trueman* to hold that the nonresident-father, who was previously married to the mother when the child was born, was required to have minimum contacts with the State).

*Trueman*, 99 N.C. App. at 581, 393 S.E.2d at 570. Thus, the father's "meager contacts" with the State were insufficient to support an exercise of personal jurisdiction over him for purposes of the termination proceeding. *Id.*

In *In re Dixon*, however, the Court of Appeals began to recognize that in some circumstances " 'fair play and substantial justice' do not necessitate minimum contacts with the forum state or notice to the party." *In re Dixon*, 112 N.C. App. 248, 251, 435 S.E.2d 352, 353 (1993). Specifically, the court in *Dixon* held that a nonresident-father's parental rights can be terminated in the absence of minimum contacts with North Carolina if the child is born out of wedlock and the father has failed to establish paternity, legitimate his child, or provide substantial financial assistance or care to the child and mother. *Id.* at 251, 435 S.E.2d at 354.

The *Dixon* court reasoned that "a father's constitutional right to due process of law does not 'spring full-blown from the biological connection between parent and child' but instead arises only where the father demonstrates a commitment to the responsibilities of parenthood." *Id.* (quoting *Lehr v. Robertson*, 463 U.S. 248, 260 (1983)).

While this Court has not addressed the issue of minimum contacts in termination of parental rights cases, we have considered it in a child support case. In *Miller*, the father moved to set aside a child support order increasing his child support obligations after failing to appear for the hearing. *Miller*, 313 N.C. at 476, 329 S.E.2d at 664. The father's only contacts with the State were that his daughter had lived in

North Carolina for nine years, he had sent child support payments into the State, and he came to the State several times to visit his daughter. *Id.* at 478, 329 S.E.2d at 665.

This Court focused on the concept of fairness and the "realization that a contrary result could prevent the exercise of visitation privileges of non-custodial parents." *Id.* at 480, 329 S.E.2d at 667. We explained that it would not be fair to subject a parent to litigation in a forum where he has done nothing more than merely acquiesce to his children's presence. *Id.* at 479, 329 S.E.2d at 666. Furthermore, we observed that while the State "has an important interest in ensuring that non-resident parents fulfill their support obligations to their children living here," if the minimum contacts standard were satisfied by merely visiting the child in the state or sending support payments into the State, non-resident parents would be forced to choose between fulfilling their obligations to their child or refraining from such contact with the child in order to avoid being subject to suit in the State. *Id.* at 480, 329 S.E.2d at 667.

The Court further explained that "defendant ha[d] engaged in no acts with respect to North Carolina by which he ha[d] purposefully availed himself of the benefits, protections and privileges of the laws of this State." *Id.* at 480–81, 329 S.E.2d at 667. For those reasons, we held that the father's support payments and visits to the State were insufficient to establish minimum contacts. *Id.* at 479–80, 329 S.E.2d at 666–67.

The Supreme Court of the United States has long recognized that some cases warrant an exception to the traditional due process requirements. Specifically, the Court has held that "cases involving the personal status of the plaintiff, such as divorce actions, could be adjudicated in the plaintiff's home State even though the defendant could not be served within the State." *Shaffer v. Heitner,* 433 U.S. 186, 202 (1977) (citing *Pennoyer v. Neff,* 95 U.S. 714, 733–35 (1878)). The Court's recognition of the status exception implies that minimum contacts are not required in status cases because jurisdiction is established by the status of the plaintiff, rather than the location of the defendant.

The critical issue here is whether a child's relationship to her parents is sufficient to allow adjudication, based on status, in her home state even though the parents would not otherwise be subject to personal jurisdiction there. The Supreme Court of the United States has not defined the limits of the status exception or explicitly recognized its application outside of divorce proceedings; however, it briefly discussed the issue of status in a custody case, *May v. Anderson,* 345 U.S. 528 (1953).

In *May,* the mother and the father were married and domiciled in Wisconsin. *May*, 345 U.S. at 530. After marital troubles arose, the couple agreed that the mother should take the children to Ohio until the two could resolve their disputes. *Id.* The mother later informed the father that she had decided not to return to Wisconsin. *Id.* The father filed suit in Wisconsin, seeking absolute divorce and custody of the children. *Id.* The mother made no appearance in the Wisconsin proceedings and the

father was awarded custody of the children. *Id.* at 531. The mother contested the validity of the custody decree. *May*, 345 U.S. at 530–31.

Although the Court held that personal jurisdiction was needed over the mother and reversed the custody decree, Justice Frankfurter, in a concurrence, emphasized the narrowness of the holding. *Id.* at 535 (Frankfurter, J., concurring) ("[T]he only thing the Court decides . . . is that the Full Faith and Credit Clause does not require Ohio, in disposing of the custody of children in Ohio, to accept, in the circumstances before us, the disposition made by Wisconsin.").

In a dissent, Justice Jackson recognized the burden placed on a state that cannot constitutionally adjudicate controversies surrounding guardianship, despite the child being domiciled there. Specifically, he noted:

> Personal jurisdiction of all parties to be affected by a proceeding is highly desirable, to make certain that they have had valid notice and opportunity to be heard. But the assumption that it overrides all other considerations and in its absence a state is constitutionally impotent to resolve questions of custody flies in the face of our own cases.

*Id.* at 541 (Jackson, J., dissenting).

Given the nature of the Court's reasoning, many state courts have not viewed the holding in *May* as an absolute bar to exercising status jurisdiction in custody cases. *See, e.g.*, *In re Marriage of Leonard*, 122 Cal. App. 3d 443, 451–452, 175 Cal. Rptr. 903, 907–08 (1981) (construing *May* as limited to whether a state is required to recognize a custody order under Full Faith and Credit Clause), *abrogated by*

*McArthur v. Superior Court*, 235 Cal. App. 3d 1287, 1293, 1 Cal. Rptr. 2d 296, (1991) (holding that *May* and its progeny require personal jurisdiction to modify the custody order of another state which has maintained jurisdiction); *In re R.W.*, 2011 VT 124, ¶¶ 28–29, 191 Vt. 108, 123–24, 39 A.3d 682, 692–93 (2011) (construing Frankfurter's concurrence as a limitation to the reasoning of the majority). *But see* Rhonda Wasserman, *Parents, Partners, and Personal Jurisdiction*, 1995 U. Ill. L. Rev. 813, 874–79 (recognizing that Frankfurter's view of what the Court decided in *May* is "widely accepted," but arguing that the *May* majority opinion is incompatible with Frankfurter's view and is good law as applied to custody decisions).

Many courts have concluded that the Court would be receptive to applying the status exception in termination of parental rights cases. *See, e.g., In re R.W.*, 2011 VT 124, ¶ 31, 191 Vt. at 124–25, 39 A.3d at 693 (holding that status jurisdiction applies to cases involving termination of parental rights); *In re Thomas J.R.*, 2003 WI 61 ¶ 2, 261 Wis. 2d 217, 220–21, 663 N.W.2d 734, 736 (2003) (holding that the status exception applies in all custody matters, including termination); *S.B. v. State*, 61 P.3d 6, 14–15 (Alaska 2002) (holding that using the status exception in termination proceedings does not violate that parent's rights to due process); *J.D. v. Tuscaloosa Cnty. Dep't of Human Res.*, 923 So. 2d 303, 310 (Ala. Civ. App. 2005) (holding that the "status exception to the requirement that the defendant have minimum contacts with the forum state applies to termination-of-parental-rights proceedings"). *But see In re John Doe*, 83 Haw. 367, 374, 926 P.2d 1290, 1297 (1996) (holding that exercising

personal jurisdiction over the nonresident mother would not comport with the notion of fair play and substantial justice given the absence of her contacts with the state).

The purpose of termination of parental rights proceedings is to address circumstances where parental care fails to "promote the healthy and orderly physical and emotional well-being of the juvenile," while also recognizing "the necessity for any juvenile to have a permanent plan of care at the earliest possible age." N.C.G.S. § 7B-1100. In North Carolina, the best interests of the child are the paramount consideration in termination of parental rights cases. *See In re Montgomery,* 311 N.C. 101, 109, 316 S.E.2d 246, 252 (1984). Thus, when there is a conflict between the interests of the child and the parents, courts should consider actions that are within the child's best interests over those of the parents. N.C.G.S. § 7B-1100(3).

These considerations differ from the interests this Court considered in *Miller,* where the Court recognized that the notions of fair play and substantial justice dictate that minimum contacts are required to establish personal jurisdiction in custody proceedings between two parents, either of whom may be able to provide for the well-being of the child. In termination of parental rights proceedings, which necessarily involve a parent who does not provide appropriate care, fairness requires that the State have the power to provide permanence for children living within its borders.

In circumstances where termination proceedings are appropriate, a child who is removed from his or her parents could face years of waiting in foster care or group

homes as the interested parties fight over jurisdiction. The inability to determine jurisdiction by favoring the child's home state contradicts the fundamental principle of acting in the best interests of the child and inhibits the child's home state from adjudicating termination of parental rights disputes. As another court has explained, "severance of a parent's legal relationship to his or her child requires state intervention and is a matter of state concern. Thus, a child's home state has jurisdiction to adjudicate the status of a child present even if the parent lacks minimum contact with the forum." *In re R.W.,* 2011 VT 124, ¶ 31, 191 Vt. at 125, 39 A.3d at 693 (2011).

If minimum contacts were mandatory in this case, the children would be required to travel to South Carolina where respondent-father resides and, pursuant to the UCCJEA, reside there for six months in order for South Carolina to obtain jurisdiction over the children. Thus, North Carolina would be required to relinquish departmental custody and remove the children from stable housing. Doing so would not only frustrate the State's interest in promoting the best interests of the children but could also pose further complications regarding custody and make adoption impossible.

Here, it is undisputed that respondent-father lacks contacts with North Carolina such that he would not normally be subject to our courts' jurisdiction. However, his right to actively participate in the termination proceedings would not be eliminated by the Court's implementation of the status exception. Indeed, the

burden imposed upon respondent-father, and nonresident parents in general, is mitigated by the State's appointment of counsel to nonresident parents and the right to request participation in proceedings via phone or other remote technologies. Thus, in the context of a termination of parental rights proceeding, the protections usually afforded by the minimum contacts requirement are outweighed by the State's interest in adjudicating the status of children who reside within the State.

Upon considering the conflicting interests of the parent and child in termination proceedings, we join those states that have applied the status exception to the minimum contacts requirement in termination of parental rights proceedings. In doing so, we overrule the Court of Appeals' decisions in *In re Finnican*, 104 N.C. App. 157, 408 S.E.2d 742 (1991) and *In re Trueman*, 99 N.C. App. 579, 393 S.E.2d 569 (1990). To protect the best interests of children residing in North Carolina, the process of providing them a permanent, stable home should be afforded at least the same efficiency as a divorce proceeding. A conclusion to the contrary would ignore the realities of termination of parental rights proceedings and leave children with no practical forum to have their status adjudicated.

Accordingly, we hold that due process does not require a nonresident parent to have minimum contacts with the State to establish personal jurisdiction for purposes of termination of parental rights proceedings.

AFFIRMED.